UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD TAXMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>       vs.<br><br>COVIDIEN PLC, MEDTRONIC, INC., KALANI I LIMITED, MAKANI II LIMITED, AVIATION ACQUISITION CO., INC., AVIATION MERGER SUB, LLC, JOSÉ E. ALMEIDA, JOY A. AMUNDSON, CRAIG ARNOLD, ROBERT H. BRUST, CHRISTOPHER J. COUGHLIN, RANDALL J. HOGAN, III, DENNIS H. REILLEY, STEPHEN H. RUSCKOWSKI and JOSEPH A. ZACCAGNINO,<br><br>                  Defendants. | No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR BREACH OF FIDUCIARY DUTIES<br><br><br><br><br><br><br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, by counsel, individually and on behalf of all others similarly situated, respectfully brings this class action for breach of fiduciary duty against the herein named defendants and alleges the following:

## SUMMARY OF THE ACTION

1.      This is a stockholder class action brought on behalf of the holders of Covidien plc ("Covidien" or the "Company") common stock against Covidien, its Board of Directors (the "Board"), Medtronic, Inc., a Minnesota corporation, Kalani I Limited, a private limited company organized under the laws of Ireland ("HoldCo" or "Medtronic plc"), Makani II Limited, a private limited company organized under the laws of Ireland and a wholly owned subsidiary of HoldCo ("IrSub"), Aviation Acquisition Co., Inc., a Minnesota corporation ("AcquisitionCo"), and Aviation Merger Sub, LLC, a Minnesota corporation and a wholly owned subsidiary of AcquisitionCo ("Merger Sub") (and together with Medtronic, Inc., HoldCo, IrSub, and AcquisitionCo, "Medtronic") for breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty and/or other violations of state law arising out of defendants' efforts to complete the sale of the Company to Medtronic, pursuant to an unfair process and for an unfair price (the "Proposed Acquisition").  This matter arises out of the Board's breaches of their fiduciary duties owed to the Company's stockholders under state law.

2.      Covidien develops, manufactures and sells a diverse range of industry-leading medical device and supply products.  On June 15, 2014, Covidien and Medtronic announced they had entered into a definitive agreement (the "Merger Agreement") under which Covidien would be acquired by Medtronic.  Under the terms of the Merger Agreement, Medtronic will acquire the Company in a cash and stock transaction in which the Company's stockholders would receive just $35.19 in cash and 0.956 of an ordinary share of Medtronic plc for each share of the Company's common stock.

3.      The Proposed Acquisition is the result of a conflicted and unfair process that is designed to ensure the sale of Covidien to Medtronic on terms preferential to Medtronic and defendants and to subvert the interests of plaintiff and the other public stockholders of the Company. The Board and members of management own an illiquid block of 2,688,052 shares of Covidien common stock, and by the Proposed Acquisition seek liquidity for their illiquid Covidien holdings. If the Proposed Acquisition closes, the Board and members of management will receive over **$95.9 million** in cash and approximately 2,569,778 Medtronic plc shares from the sale of their illiquid holdings.

4.      The Proposed Acquisition significantly undervalues Covidien. Based on Medtronic's June 13, 2014 closing price, the Proposed Acquisition consideration is valued at approximately $93.22 per share, well below at least one analyst's estimated value of $97.00 per share according to Yahoo! Finance. Moreover, over the past few years, the market has reacted positively to Covidien's growth and future prospects, and that reaction is reflected in the price of the Company's stock. From the beginning of 2012 to just before the announcement of the Proposed Acquisition, the market price of Covidien common stock has increased by **86%**, from an adjusted closing price on January 3, 2012 of $38.80 per share to $72.02 per share on June 13, 2014, the last trading day before the deal was made public. Furthermore, the Proposed Acquisition will make the combined company a "cash machine," with an estimated $7 billion in free cash flow annually, according to Bill George, Medtronic's former Chief Executive Officer ("CEO") and now a professor at Harvard Business School in Boston.

5.      But the critical reason for the Proposed Acquisition, and the value to Medtronic, is taxes. Following the merger, Medtronic would reincorporate in Ireland but maintain its headquarters in the United States, as Covidien does now, with its headquarters in Mansfield, Massachusetts. Such

an inversion would allow Medtronic to be treated as a foreign company after the transaction. The move would allow the company to access its $14 billion in cash held abroad without paying U.S. taxes.

6.     The Merger Agreement also includes deal protection devices that will preclude a fair sales process for the Company and lock out competing bidders.  These preclusive deal protection devices include:

(a)     a "no-solicitation" provision that precludes Covidien from providing confidential Company information to, or even communicating with, potential competing bidders for the Company except under very limited circumstances;

(b)     an illusory "fiduciary out" for the No-Shop provision that requires the Company to provide Medtronic with advance notice before providing any competing bidder with any confidential Company information, even after the Board has determined that the competing bid is reasonably likely to lead to a superior proposal and that the Board is breaching its fiduciary duties by not providing the competing bidder with confidential Company information;

(c)     an "information rights" provision that requires the Company to provide Medtronic with confidential non-public information about competing proposals which Medtronic can then use to formulate a matching bid; and

(d)     a "matching rights" provision that requires Covidien to provide Medtronic with the opportunity to match any competing proposal.

7.     In sum, by agreeing to the Proposed Acquisition, each of the defendants has breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches.  Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed

Acquisition to aggrandize their own personal interests and to meet the specific needs of Medtronic, which efforts will eliminate the equity interest of Covidien's public shareholders.

8.      In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of Covidien with Medtronic on terms preferential to Medtronic and defendants, and detrimental to plaintiff and Covidien's shareholders.  Plaintiff seeks to enjoin the Proposed Acquisition.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(l) and (2), in that plaintiff and defendants are citizens of different states or subjects of a foreign state and the matter in controversy exceeds $75,000, exclusive of interest and costs.

10.      This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because Covidien's U.S. headquarters are located at 15 Hampshire Street, Mansfield, Massachusetts 02048, and defendants include two directors who reside in Massachusetts.

## PARTIES

12.      Plaintiff Richard Taxman is, and at all times relevant hereto was, a shareholder of Covidien.  Plaintiff is a resident of the State of Colorado.

13.      Defendant Covidien is an Irish private limited company with U.S. headquarters in Mansfield, Massachusetts.  Covidien is sued herein as an aider and abettor.

14.      Defendant Medtronic, Inc. is a Minnesota corporation headquartered in Minneapolis, Minnesota.  Medtronic, Inc. is sued herein as an aider and abettor.

- 4 -

15.     Defendant HoldCo is a private limited company organized under the laws of Ireland. HoldCo is sued herein as an aider and abettor.

16.     Defendant IrSub is a private limited company organized under the laws of Ireland and a wholly owned subsidiary of HoldCo.  IrSub is sued herein as an aider and abettor.

17.     Defendant AcquisitionCo is a Minnesota corporation.  AcquisitionCo is sued herein as an aider and abettor.

18.     Defendant Merger Sub is a Minnesota corporation and a direct wholly owned subsidiary of AcquisitionCo.  Merger Sub is sued herein as an aider and abettor.

19.     Defendant José E. Almeida is and at all times relevant hereto has been Covidien's President and CEO, and a director and Chairman of the Board.  Defendant Almeida is a resident of the Commonwealth of Massachusetts.

20.     Defendant Joy A. Amundson is and at all times relevant hereto has been a member of the Board.  Defendant Amundson is a resident of the State of Florida.

21.     Defendant Craig Arnold is and at all times relevant hereto has been a member of the Board.  Defendant Arnold is a resident of the State of Ohio.

22.     Defendant Robert H. Brust is and at all times relevant hereto has been a member of the Board.  Defendant Brust is a resident of the State of Florida.

23.     Defendant Christopher J. Coughlin is and at all times relevant hereto has been a member of the Board.  Defendant Coughlin is a resident of the State of Florida.

24.     Defendant Randall J. Hogan, III is and at all times relevant hereto has been a member of the Board.  Defendant Hogan is a resident of the State of Minnesota.

25.     Defendant Dennis H. Reilley is and at all times relevant hereto has been a member of the Board.  Defendant Reilley is a resident of the State of Florida.

26.     Defendant Stephen H. Rusckowski is and at all times relevant hereto has been a member of the Board.  Defendant Rusckowski is a resident of the Commonwealth of Massachusetts.

27.     Defendant Joseph A. Zaccagnino is and at all times relevant hereto has been a member of the Board.  Defendant Zaccagnino is a resident of the State of Connecticut.

28.     The defendants named above in ¶¶19-27 are sometimes collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all public holders of Covidien common stock who are being and will be harmed by defendants' actions described below (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

30.     The Class is so numerous that joinder of all members is impracticable.  According to Covidien's U.S. Securities and Exchange Commission filings, as of April 29, 2014, there were more than 450 million shares of Covidien common stock outstanding.

31.     There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

        (a)     whether defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

        (b)     whether defendants are engaging in self-dealing in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

(c)     whether defendants have breached their fiduciary duty to secure and obtain the best value reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

(d)     whether defendants are unjustly enriching themselves and other insiders or affiliates of Covidien and/or Medtronic, and/or are aiding and abetting therein;

(e)     whether defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, candor and fair dealing, and/or are aiding and abetting therein;

(f)     whether defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets, and/or have aided and abetted therein;

(g)     whether the Proposed Acquisition compensation payable to plaintiff and the Class is unfair and inadequate; and

(h)     whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

32.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

33.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

34.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

35.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

36.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE PROPOSED ACQUISITION

37.     Covidien develops, manufactures and sells a diverse range of industry-leading medical device and supply products.  With 2013 revenue of $10.2 billion, Covidien has more than 38,000 employees worldwide in more than 70 countries, and its products are sold in over 150 countries.

38.     Medtronic, Inc., headquartered in Minneapolis, is the world's largest medical technology company – alleviating pain, restoring health, and extending life for millions of people around the world.

39.     Over the past few years, the market has reacted positively to Covidien's growth and future prospects, and that reaction is reflected in the price of the Company's stock.  From the beginning of 2012 to just before the announcement of the Proposed Acquisition, the market price of Covidien common stock increased by *86%*, from an adjusted closing price on January 3, 2012 of $38.80 per share to $72.02 per share on June 13, 2014, the last trading day before the deal was made public.

40.     Most recently, on April 25, 2014, Covidien reported its financial results for the second quarter of fiscal 2014 (ended March 28, 2014).  The Company's second quarter net sales of $2.60 billion increased 3% from $2.53 billion in the second quarter a year ago.  Operational sales growth was 4% in the second quarter, as foreign exchange rate movement lowered the quarterly

sales growth rate by just over one percentage point.   Commenting on these results, defendant Almeida stated:

> "As we continue to invest in and execute our global strategy, we are seeing results in line with our year-to-date expectations. . . .   With the impact of the medical device tax annualized and, at today's rates, the majority of the negative currency impact behind us, *we expect the company to return to double-digit EPS growth, possibly as soon as the third quarter*."

41.   In the release reporting its second quarter results, Covidien also highlighted the Company's "strategy of innovation, customer-focused portfolio management, emerging markets growth and driving operational leverage," which includes:

- Completing the acquisition of Given Imaging, which provides the company additional scale and scope to serve the multibillion dollar global gastrointestinal market.

- Launching the Endo GIA™ Reinforced Reload with Tri-Staple™ technology in both the U.S. and Japan and rolling out additional products including the Puritan Bennett™ 980 ventilator, Symbotex™ Composite Mesh for hernia repair and Kangaroo™ Feeding Tube with IRIS Technology.

- Opening a Covidien Center for Innovation in India, the company's first medical training and education center in the country.

42.   Despite the Company's increased sales, its expectations that it would be returning to double digit earnings per share as soon as the current quarter, and its continued execution of its strategy of innovation, customer-focus, emerging markets growth and driving operational leverage, Covidien announced just two months later that its Board had decided to sell the Company.  On June 15, 2014, Covidien and Medtronic announced they had entered into the Merger Agreement pursuant to which Covidien would be acquired by Medtronic.  Under the terms of the Merger Agreement, Medtronic will acquire the Company in a cash and stock transaction in which the Company's stockholders would receive just $35.19 in cash and 0.956 of an ordinary share of Medtronic plc for each share of the Company's common stock owned.

43.     The press release announcing the Proposed Acquisition states in pertinent part:

**Medtronic to Acquire Covidien for $42.9 billion in Cash and Stock**

*Creates a Medical Technology and Services Company with a Comprehensive Product Portfolio and Broad Global Reach that is Better Able to Improve Healthcare Outcomes*

*Meaningfully Accelerates Medtronic's Core Strategies of Therapy Innovation, Globalization and Economic Value*

*Combined Revenue of $27 Billion, including $3.7 Billion from Emerging Markets*

*Transaction Expected to be Accretive to Medtronic Cash Earnings in FY2016 and Significantly Accretive thereafter*

*Medtronic Commits to $10 Billion in Additional U.S. Technology Investments Over 10 Years*

. . . Medtronic, Inc., a global leader in medical technology, services and solutions, and Covidien plc, a global healthcare technology and medical supplies provider, today announced that they have entered into a definitive agreement under which Medtronic has agreed to acquire Covidien in a cash-and-stock transaction valued at $93.22 per Covidien share, or a total of approximately $42.9 billion, based on Medtronic's closing stock price of $60.70 per share on June 13, 2014.

Once the transaction is completed, Medtronic will have significantly advanced its position as the world's premier medical technology and services company. The combined company will have a comprehensive product portfolio, a diversified growth profile and broad geographic reach, with 87,000 employees in more than 150 countries. The Boards of Directors of both companies have unanimously approved the transaction.

"We are excited to reach this agreement with Covidien, which further advances our mission to alleviate pain, restore health and extend life for patients around the world," said Omar Ishrak, Chairman and Chief Executive Officer of Medtronic. "This acquisition will allow Medtronic to reach more patients, in more ways and in more places. Our expertise and portfolio of services will allow us to serve our customers more efficiently and better address the demands of the current healthcare marketplace. We also look forward to welcoming the Covidien team to Medtronic and working together to improve healthcare outcomes globally."

"Covidien and Medtronic, when combined, will provide patients, physicians and hospitals with a compelling portfolio of offerings that will help improve care and surgical performance," said José E. Almeida, Chairman, President and Chief Executive Officer of Covidien. "This transaction provides our shareholders with immediate value and the opportunity to participate in the significant upside potential of the combined organization. I'd like to thank our 38,000 employees whose hard

work and dedication has enabled Covidien to deliver innovative health solutions that improve patient outcomes."

**Strategic Rationale**

The combination with Covidien supports and accelerates Medtronic's three fundamental strategies:

**Therapy Innovation:** With its expanded portfolio of innovative products and services, Medtronic will be a preeminent leader in delivering therapy and procedural innovations to address the major disease states impacting patients and healthcare costs around the world. Covidien has an impressive portfolio of industry- leading products that enhance Medtronic's existing portfolio, offer greater breadth across clinical areas, and create exciting entry points into new therapies.

**Globalization:** With a presence in more than 150 countries, the combined entity will be better able to serve global market needs. Medtronic and Covidien have combined revenues of $13 billion from outside the U.S., of which $3.7 billion comes from emerging markets. Covidien's extensive capabilities in emerging market R&D and manufacturing, joined with Medtronic's demonstrated clinical expertise across a much broader product offering, significantly increases the number of attractive solutions the new company will be able to offer to governments and major providers globally.

**Economic Value:** Medtronic has adopted an intense focus on aligning with its customers to create more value in healthcare systems around the world – in various delivery and payment systems – by combining products, services and insights into solutions aimed at expanding access and reducing healthcare costs. With Covidien, Medtronic will be able to provide a broader array of complementary therapies and solutions that can be packaged to drive more value and efficiency in healthcare systems. Both companies' deep relationships with healthcare system stakeholders will provide enormous ability to identify and create further value-based solutions.

**U.S. Investment Commitment as a Result of Combination**

The U.S. is home to the global medtech industry, one of the most innovative global industries centered in the U.S., and medical devices are among the most valuable U.S. exports. The combined company is strongly committed to the U.S. as a healthcare innovator, strategic business partner and employer of choice.

As a direct benefit of the company's new financial structure, Medtronic will commit to $10 billion in technology investments over the next 10 years in areas such as early stage venture capital investments, acquisitions and R&D in the U.S., above and beyond Medtronic's and Covidien's existing plans.

"The medical technology industry is critical to the U.S. economy, and we will continue to invest and innovate and create well-paying jobs," said Mr. Ishrak.

- 11 -

"Medtronic has consistently been the leading innovator and investor in U.S. medtech, and this combination will allow us to accelerate those investments. These investments ultimately produce new therapy and treatment options that improve or save lives for millions of people around the world."

**Structure and Governance**

After the completion of the transaction, the businesses of Medtronic and Covidien will be combined under a new entity to be called Medtronic plc. It will have its principal executive offices in Ireland, where Covidien's current headquarters resides and where both companies have a longstanding presence. Medtronic plc will be led by Mr. Ishrak, and will continue to have its operational headquarters in Minneapolis, where Medtronic currently employs more than 8,000 people.

**Financial Highlights**

Upon completion of the transaction, each outstanding ordinary share of Covidien will be converted into the right to receive $35.19 in cash and 0.956 of an ordinary share of Medtronic plc. The per-share consideration represents a premium of 29% to Covidien's closing stock price on June 13, 2014, the last trading day prior to the announcement. Medtronic shareholders will exchange each share of stock they own in Medtronic for one ordinary share of stock in Medtronic plc. The transaction is expected to be taxable, for U.S. federal income tax purposes, to shareholders of both Medtronic and Covidien.

The proposed transaction represents compelling value to Covidien shareholders through the cash component and continued participation in the future growth prospects expected to result from the combination through their ownership of approximately 30% of the combined company.

The transaction is expected to be accretive to Medtronic's cash earnings in FY 2016, the first full fiscal year, and significantly accretive thereafter. The transaction is also expected to be accretive to GAAP earnings by FY 2018.

The combination is expected to result in at least $850 million of annual pre-tax cost synergies by the end of fiscal year 2018. These synergies include the benefits of optimizing global back-office, manufacturing and supply-chain infrastructure, as well as the elimination of redundant public company costs. The estimate excludes any benefit from potential revenue synergies resulting from the combination of the two organizations.

Through this combination, Medtronic is expected to generate significant free cash flow, which it will be able to deploy with greater strategic flexibility, particularly in the U.S.

The consummation of the transaction is subject to certain conditions, including approvals by Medtronic and Covidien shareholders. In addition, the proposed transaction requires regulatory clearances in the U.S., the E.U., China and

certain other countries. The transaction is expected to close in the fourth calendar quarter of 2014 or early 2015.

Medtronic's financial advisor is Perella Weinberg Partners LP and its legal advisors are Cleary Gottlieb Steen & Hamilton LLP and A & L Goodbody. Covidien's financial advisor is Goldman, Sachs & Co. and its legal advisors are Wachtell, Lipton, Rosen & Katz and Arthur Cox.

Bank of America Merrill Lynch provided committed financing for the transaction.

(Footnote omitted.)

44.     The Proposed Acquisition is the result of a conflicted and unfair process that is designed to ensure the sale of Covidien to Medtronic on terms preferential to Medtronic and defendants and to subvert the interests of plaintiff and the other public stockholders of the Company. The Board and members of management own an illiquid block of 2,688,052 shares of Covidien common stock, and by the Proposed Acquisition seek liquidity for their illiquid Covidien holdings. If the Proposed Acquisition closes, the Board and members of management will receive over **$95.9 million** in cash and approximately 2,569,778 Medtronic plc shares from the sale of their illiquid holdings.

45.     From the Proposed Acquisition, Covidien's officers and directors will receive millions of dollars in special payments – not being made to ordinary shareholders – for currently unvested stock options, performance units, and restricted shares, all of **which shall, upon completion of the transaction, become fully vested and exercisable**.  The Company's senior management is also entitled to receive millions of dollars more from the Proposed Acquisition in change-of-control payments.  Thus, the Board is conflicted and serving its own liquidity interests rather the interests of Covidien's shareholders.

46.     The Proposed Acquisition significantly undervalues Covidien.  Based on Medtronic's June 13, 2014 closing price, the Proposed Acquisition consideration is valued at approximately

$93.22 per share, well below at least one analyst's estimated value of $97.00 per share according to Yahoo! Finance.  Moreover, over the past few years, as noted above, as the market has reacted positively to Covidien's growth and future prospects, the market price of Covidien common stock has increased by *86%*, from an adjusted closing price on January 3, 2012 of $38.80 per share to $72.02 per share on June 13, 2014, the last trading day before the deal was made public.  Furthermore, the Proposed Acquisition will make the combined company a "cash machine," with an estimated $7 billion in free cash flow annually, according to Bill George, Medtronic's former chief executive officer and now a professor at Harvard Business School in Boston.  And Covidien will provide Medtronic with a lot of cash, as the Company generated $1.6 billion in free cash flow in 2013, a significant 15.8% free cash flow yield.  The Proposed Acquisition price also does not value the $850 million in synergies that both companies anticipate from the deal.

47.     But the critical reason for the Proposed Acquisition, and the value to Medtronic, is taxes.  Following the merger, Medtronic would reincorporate in Ireland but maintain its headquarters in the United States, as Covidien does now, with its headquarters in Mansfield, Massachusetts. Such an inversion would allow Medtronic to be treated as a foreign company after the transaction. The move would allow the company to access its $14 billion in cash held abroad without paying U.S. taxes.  Medtronic will be able to use that cash hoard to expand or pay dividends without paying a 35% corporate tax on those repatriated funds.

48.     The Merger Agreement also includes deal protection devices that will preclude a fair sales process for the Company and lock out competing bidders.  These preclusive deal protection devices include:

(a)     a "no-solicitation" provision that precludes Covidien from providing confidential Company information to, or even communicating with, potential competing bidders for the Company except under very limited circumstances;

(b)     an illusory "fiduciary out" for the No-Shop provision that requires the Company to provide Medtronic with advance notice before providing any competing bidder with any confidential Company information, even after the Board has determined that the competing bid is reasonably likely to lead to a superior proposal and that the Board is breaching its fiduciary duties by not providing the competing bidder with confidential Company information;

(c)     an "information rights" provision that requires the Company to provide Medtronic with confidential, non-public information about competing proposals which Medtronic can then use to formulate a matching bid; and

(d)     a "matching rights" provision that requires Covidien to provide Medtronic with the opportunity to match any competing proposal.

49.     In sum, by agreeing to the Proposed Acquisition, each of the defendants has breached fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing owed to Covidien's shareholders, and/or has aided and abetted such breaches.  Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of Medtronic, which efforts will eliminate the equity interest of Covidien's public shareholders.

50.     In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of Covidien with Medtronic on terms preferential to

Medtronic and defendants, and detrimental to plaintiff and Covidien's shareholders.  Plaintiff seeks to enjoin the Proposed Acquisition.

## DEFENDANTS' FIDUCIARY DUTIES

51.     Under Irish law, the directors of a private limited company like Covidien must not act in a manner that is oppressive to its shareholders, or where the affairs of the Company are being conducted in a manner which disregards the interests of its shareholders.  In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control or (ii) a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with these duties, the directors may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits them from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the directors with preferential treatment at the expense of, or separate from, the public shareholders.

52.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Covidien, are obligated to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)      participating in any transaction where the directors or officers receive or are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)      unjustly enriching themselves at the expense or to the detriment of the public shareholders.

53.      Plaintiff alleges herein that defendants, separately and together, in connection with the Proposed Acquisition, violated and/or aided and abetted in the violation of fiduciary duties owed to plaintiff and the other public shareholders of Covidien, including the duties of loyalty, good faith, candor, due care and independence.  As a result of these breaches of fiduciary duties and the aiding and abetting thereof, neither plaintiff nor the Class will receive adequate or fair value for their Covidien common stock in the Proposed Acquisition.

## COUNT

### Claim for Breach of Fiduciary Duties and Aiding and Abetting
### Against All Defendants

54.      Plaintiff repeats and realleges each allegation set forth herein.

55.      The Individual Defendants, aided and abetted by Covidien, Medtronic, Inc., HoldCo, IrSub, AcquisitionCo, and Merger Sub, have knowingly or recklessly and in bad faith violated their fiduciary duties of care, loyalty, candor, good faith, and independence owed to the public shareholders of Covidien and have acted to put their personal interests ahead of the interests of Covidien's shareholders.

56.      By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith are attempting to unfairly deprive plaintiff and the other members of the Class of the true value of their investment in Covidien.

57.     The Individual Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties by entering into the Proposed Acquisition without regard to the fairness of the transaction to Covidien's shareholders.  Covidien, Medtronic, Inc., HoldCo, IrSub, AcquisitionCo, and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the other holders of Covidien stock.

58.     As demonstrated by the allegations above, the Individual Defendants knowingly or recklessly and in bad faith failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of Covidien because, among other reasons, they failed to ensure a fair process and maximization of shareholder value.

59.     Because the Individual Defendants dominate and control the business and corporate affairs of Covidien, and are in possession of private corporate information concerning Covidien's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Covidien which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

60.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

61.     As a result of the actions of defendants, plaintiff and the Class have been and will be irreparably harmed.

62.     Unless the Proposed Acquisition is enjoined by the Court, defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the other

members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition's terms, and will not supply to Covidien's shareholders sufficient information to enable them to make informed decisions regarding the tender of their shares in connection with the Proposed Acquisition, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

63.     Plaintiff and the other members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in plaintiff's favor and in favor of the Class and against defendants, as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring and decreeing that the Proposed Acquisition was entered into in breach of the fiduciary duties of the defendants and is therefore unlawful and unenforceable;

C.     Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

D.     Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of Covidien's shareholders and to refrain from entering into any transaction until the process for the sale or merger of the Company is completed and the highest possible value is obtained;

E.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

F.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  July 10, 2014                  HUTCHINGS, BARSAMIAN, MANDELCORN
                                         & ROBINSON, LLP
                                       THEODORE M. HESS-MAHAN, BBO #557109


                                       /s/Theodore M. Hess-Mahan
                                       _____
                                       THEODORE M. HESS-MAHAN

                                       110 Cedar Street, Suite 250
                                       Wellesley Hills, MA  02481
                                       Telephone:  781/431-2231
                                       781/431-8726 (fax)
                                       thess-mahan@hutchingsbarsamian.com

                                       ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       RANDALL J. BARON
                                       A. RICK ATWOOD, JR.
                                       DAVID T. WISSBROECKER
                                       EDWARD M. GERGOSIAN
                                       655 West Broadway, Suite 1900
                                       San Diego, CA  92101
                                       Telephone:  619/231-1058
                                       619/231-7423 (fax)

                                       THE BRISCOE LAW FIRM, PLLC
                                       WILLIE C. BRISCOE
                                       8150 N. Central Expressway, Suite 1575
                                       Dallas, TX  75206
                                       Telephone:  214/239-4568
                                       281/254-7789 (fax)

POWERS TAYLOR LLP
PATRICK W. POWERS
Campbell Centre II
8150 North Central Expressway, Suite 1575
Dallas, TX  75206
Telephone:  214/239-8900
214/239-8901 (fax)

Attorneys for Plaintiff

S:\CptDraft\Deal\CPT Covidien.docx