**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE COVIDIEN PLC SECURITIES LITIGATION | CASE NO. 1:14-CV-12949-LTS |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............................................. 3

III.  THE TERMS OF THE SETTLEMENT ................................................................ 6

IV.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................. 7

   A.  Standards for Preliminary Approval ................................................................. 7

   B.  The Supplemental Disclosures Provided Valuable Benefits to Covidien Shareholders ...... 9

   C.  The Settlement Was Reached after Significant Arm's-Length Negotiations ................... 10

V.  PRELIMINARY CLASS CERTIFICATION IS APPROPRIATE ....................................... 12

   A.  The Requirements of Rule 23(A) Are Met ......................................................... 13

      1.  The Proposed Class is Sufficiently Numerous ................................................. 13

      2.  Questions of Law and Fact are Common to the Class ....................................... 13

      3.  Plaintiffs' Claims are Typical of the Class' Claims .......................................... 14

      4.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ................... 15

   B.  The Requirements of Rule 23(b)(3) Are Met ..................................................... 16

      1.  Common Questions of Law and Fact Predominate ........................................... 16

      2.  A Class Action in the Superior Method of Adjudication ..................................... 17

VI.  THE PROPOSED NOTICE FAIRLY APPRISES THE SETTLEMENT CLASS
    MEMBERS OF THE TERMS OF THE SETTLEMENT ................................................. 18

VII.  PROPOSED SCHEDULE ............................................................................... 19

VIII.  CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (U.S. 1997) ............................................................................... 21, 23

*Arnold v. Soc'y for Sav. Bancorp, Inc.,*
    650 A.2d 1270 (Del. 1994) ................................................................................. 13

*Bennett v. Roark Capital Group, Inc.,*
    2011 WL 1627939 (D. Me. Apr. 27, 2011) ........................................................ 23

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
    100 F.3d 1041 (1st Cir. 1996) ............................................................................ 15

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ............................................................................ 15

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    183 F.3d 1 (1st Cir. 1999) ................................................................................... 12

*Durrett v. Hous. Auth. of City of Providence,*
    896 F.2d 600 (1st Cir. 1990) .............................................................................. 11

*Hochstadt v. Boston Scientific Corp.,*
    708 F. Supp. 2d 95 (D. Mass. 2010) ...................................................... 16, 19, 23

*In re Boston Scientific Corp. Sec. Litig.,*
    604 F. Supp. 2d 275 (D. Mass. 2009) ................................................................ 16

*In re Credit-Suisse-AOL Sec. Litig.,*
    253 F.R.D. 17 (D. Mass. 2008) .......................................................................... 19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ................................................................................. 11

*In re Lupron Mktg. & Sales Practices Litig.,*
    228 F.R.D. 75 (D. Mass. 2005) .......................................................................... 17

*In re Relafen Antitrust Litig.,*
    218 F.R.D. 337 (D. Mass. 2003) .................................................................. 17, 20

*In re Sonus Networks, Inc. Sec. Litig.,*
    247 F.R.D. 244 (D. Mass. 2007) ........................................................................ 17

*In re StockerYale, Inc. Sec. Litig.,*
    2007 WL 2410361 (D.N.H. Aug. 21, 2007) .......................................................... 17

*In re Talley Indus., Inc. S'holders Litig.,*
    No. 15961, 1998 WL 191939 (Del. Ch. Apr. 13, 1998) ........................................ 13

*In re Transkaryotic Therapies, Inc. Sec. Litig.,*
    2005 WL 3178162 (D. Mass. Nov. 28, 2005) ....................................................... 18

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004).................................................................................. 11

*Metro. Hous. Dev. Corp. v. Village of Arlington Heights,*
    616 F.2d 1006 (7th Cir. 1980) .............................................................................. 11

*Nagy v. Bistricer,*
    770 A.2d 43 (Del. Ch. 2000)................................................................................. 14

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972).................................................................................. 12

*Officers for Justice v. Civil Serv. Comm'n of S.F.,*
    688 F.2d 615 (9th Cir. 1982) ................................................................................ 12

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985)............................................................................................... 21

*Randle v. Spectran,*
    129 F.R.D. 386 (D. Mass. 1988)........................................................................... 21

*Rolland v. Cellucci,*
    191 F.R.D. 3 (D. Mass. Jan. 10, 2000) ................................................................ 15

*Smilow* v. *Southwestern Bell Mobile Sys.,*
    323 F.3d 32 (1st Cir. 2003)............................................................................. 16, 21

*Stroud v. Grace,*
    606 A.2d 75 (Del. 1992) ....................................................................................... 13

*Swack v. Credit Suisse First Boston,*
    230 F.R.D. 250 (D. Mass. 2005)............................................................... 16, 20, 22

*TSC Indus. v. Northway, Inc.,*
    426 U.S. 438 (1976)............................................................................................... 13

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

**Other Authorities**

1 Newberg & Conte, NEWBERG ON CLASS ACTIONS (3d ed. 1992) ................................... 20

*Manual for Complex Litigation (Fourth)* .............................................................................. 12, 13

Lead Plaintiff[1] Rosenfeld Family Foundation, supported by plaintiffs in the consolidated action, Joseph Lipovich and Richard Taxman (collectively, "Plaintiffs"), on behalf of similarly situated shareholders of Covidien plc ("Covidien" or the "Company"), submits this memorandum in support of Plaintiffs' unopposed motion for preliminary approval of the proposed settlement (the "Settlement") of the above captioned consolidated class action (the "Action").[2]  Through the instant motion, Plaintiffs, by the undersigned counsel, seek entry of the [Proposed] Order for Notice and Scheduling of Hearing on Settlement ("Scheduling Order"): (i) granting preliminary approval of the Settlement of the Action as embodied in the Stipulation; (ii) preliminarily certifying a non-opt out class for settlement purposes and appointing class representatives and class counsel; (iii) approving the form and manner of notice of the Settlement to Covidien Shareholders; and (iv) setting a hearing for final approval of the Settlement ("Settlement Hearing").[3]

## I.    INTRODUCTION

On June 15, 2014, Covidien and Medtronic issued a joint press release announcing that they had entered into a definitive agreement under which Medtronic agreed to acquire Covidien in a cash and stock transaction whereby Covidien shareholders would receive $35.19 in cash and

---

[1] Plaintiff Rosenfeld Family Foundation moved pursuant to Section 21 (d)(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by Section 1010(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for appointment as Co-Lead Plaintiff, along with Ronald W. Chartrand.  The Court appointed the two parties Co-Lead Plaintiffs on November 14, 2014.  On May 7, 2015, Ronald W. Chartrand moved to withdraw as Co-Lead Plaintiff.  That motion was granted by the Court on May 11, 2015 and Rosenfeld Family Foundation remains in the present action as Lead Plaintiff for the Class, as defined herein.

[2] All capitalized terms that are not otherwise defined shall have the same definitions as set forth in the Stipulation of Settlement and Release dated May 15, 2015 ("Stipulation").

[3] The Scheduling Order is attached to the Stipulation as Exhibit B, filed contemporaneously herewith.

0.956 of an ordinary share of newly-formed New Medtronic for each share of Covidien common stock owned (the "Transaction").   After substantial effort, vigorous litigation and hotly contested arm's-length negotiations conducted by skilled and experienced counsel for Plaintiffs and the Defendants, the Parties have reached a Settlement resolving all of the claims asserted in this Action.   The terms of the Settlement are set forth in the Stipulation, filed concurrently herewith.

The Settlement provides for certain supplemental disclosures regarding the Transaction with Medtronic.   These disclosures, which are set forth in more detail below, included material information regarding the background of the Transaction, the sales process for the Company, potential tax implications of the Transaction, and the financial analyses and valuations performed by the Company's financial advisor in reaching its fairness opinion ("Supplemental Disclosures"). *See* Stipulation, Ex. A.   This information was material because shareholders were entitled to know whether Covidien's Board of Directors ("Board") adequately discharged its duties to secure the best price possible for shareholders, including whether it took all steps to secure the highest price possible on behalf of Covidien shareholders.   Plaintiffs' Counsel have concluded that the Supplemental Disclosures have provided Covidien shareholders with material information sufficient to make a fully-informed decision as to vote in favor of the Transaction.

In determining whether preliminary approval of the Settlement is warranted, the Court need only determine whether the proposed Settlement is within the range of what might be found fair, reasonable, and adequate, such that notice of the Settlement should be given to Covidien shareholders and a Settlement Hearing should be scheduled to consider final approval of the Settlement.   The Court is not required, at this juncture, to make a determination as to whether Settlement should be finally approved.   The Settlement is procedurally sound and substantively

fair, and the notice meets due process standards. Accordingly, Plaintiffs respectfully submit that the Settlement easily satisfies the standards for preliminary approval.

## II.        FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2014, a putative shareholder class action complaint was filed in the Court by a Covidien shareholder captioned *Taxman* v. *Covidien plc, et al.,* 14-cv-12949 (the "*Taxman* Action"). The *Taxman* Action alleged that the Defendants breached, or aided and abetted the other Defendants' breaches of, their fiduciary duties to Covidien shareholders by agreeing to sell the Company to Medtronic following an unfair and self-serving sales process and in exchange for the inadequate proposed consideration. The *Taxman* complaint sought, among other things, declaratory and injunctive relief concerning the alleged fiduciary breaches, injunctive relief prohibiting Defendants from consummating the Transaction and other forms of equitable relief.

On July 14, 2014, New Medtronic made its initial filing of a Registration Statement on Form S-4 with the SEC, which included the preliminary joint proxy statement/prospectus of Covidien and Medtronic (the "Preliminary Proxy Statement").

On August 11 and 26, 2014, respectively, two putative shareholder class action complaints were filed in the Court by Covidien shareholders under the captions *Lipovich* v. *Covidien plc, et al.,* 14-cv-13308 (the "*Lipovich* Action"), and *Rosenfeld Family Foundation* v. *Covidien plc, et al.,* 14-cv-13490 (the "*Rosenfeld* Action"), naming Covidien and the Director Defendants as defendants, and alleging that the conduct of Covidien's directors constituted shareholder oppression in violation of Section 205 of the Irish Companies Act 1963, and that the Preliminary Proxy Statement in connection with the Transaction contains alleged material omissions and misrepresentations in violation of federal securities laws.

On September 22, 2014, the U.S. Treasury Department ("Treasury") and the IRS issued new guidance announcing their intention to issue regulations interpreting multiple sections of the Code, including Section 7874, to address inversion transactions and transactions that Treasury and the IRS characterize as "post-inversion tax avoidance transactions." Following this announcement, Medtronic determined to finance the cash component of the Transaction consideration with approximately $16.3 billion in external indebtedness ("Contemplated Funding Structure"), as opposed to its initial plan to finance a substantial portion of the cash component of the Transaction through an intercompany loan from one or more of its non-U.S. subsidiaries.

On October 20, 2014, Goldman Sachs & Co. ("Goldman Sachs") confirmed to Covidien's Board that, had Goldman Sachs performed its financial analyses set forth in its presentation to Covidien's Board on June 14, 2014 on the basis of Medtronic's adjusted Contemplated Funding Structure adopted following the September 22, 2014 announcement by Treasury and the IRS, there would have been no change to its finding of fairness.

On November 14, 2014, the Court consolidated the *Taxman, Lipovich* and *Rosenfeld Family Foundation* Actions under the caption *In re Covidien plc Securities Litigation*, 14-cv-12949 (the "Consolidated Action") and appointed a leadership structure for counsel.[4]

On November 20, 2014, Covidien filed a definitive proxy statement on Schedule 14A ("Definitive Proxy Statement") with the Securities and Exchange Commission ("SEC")

---

[4] In addition to the actions filed in this Court, on August 26, 2014, a putative shareholder class action complaint was filed in the Superior Court of the Commonwealth of Massachusetts, Suffolk County, by a Covidien shareholder under the caption *Cobb* v. *Covidien plc, et al.,* SUCV2014-02733-BLS2 (the "*Cobb* Action), which alleges similar claims to the Consolidated Action. Pursuant to the Stipulation, the *Cobb* Action will be dismissed with prejudice after the Court's approval of the Settlement. Stipulation, ¶ 9.

Thereafter, the Parties engaged in expedited discovery, including the production of documents by Covidien, including presentations made to Covidien's Board by its financial advisor, Goldman Sachs. After consultation with their experts, Plaintiffs' Counsel informed Defendants' counsel of their intentions to move for a preliminary injunction to prevent completion of the Transaction based on alleged deficiencies in the Definitive Proxy Statement, further demanding that such information be disclosed to Covidien shareholders prior to the January 5, 2016 shareholder vote on the Transaction.

Subsequently, the Parties and their respective counsel engaged in arm's-length negotiations concerning these additional disclosures prior to the January 6, 2015 Covidien shareholder meeting and conditions of a potential resolution of the Consolidated Action.  As a result of these negotiations, on December 23, 2014, the Parties entered into an agreement-in-principle to resolve the Action and executed a Memorandum of Understanding ("MOU") setting forth the key terms of the Settlement.  Pursuant to the MOU, Defendants agreed to make specific supplemental disclosures ("Supplemental Disclosures"), as set forth in Exhibit A to the Stipulation and provide additional reasonable discovery to allow Plaintiffs to confirm the fairness, reasonableness an adequacy of the proposed Settlement.

Following the execution of the MOU, on December 23, 2014, Covidien made the Supplemental Disclosures by filing a Form 8-K with the SEC.  Stipulation, Ex. A. Covidien shareholders subsequently voted in favor of the Transaction at an extraordinary general meeting of shareholders.  The Transaction closed on January 26, 2015.

Thereafter, the Parties engaged in confirmatory discovery, including the production of additional documents by Covidien, and depositions of Covidien Board member Randall J. Hogan, III and Paresh Lala, a representative of Goldman Sachs.

After further negotiations, on May 15, 2015, the Parties executed the Stipulation.

**III.    THE TERMS OF THE SETTLEMENT**

In consideration for the Settlement and dismissal with prejudice of the Action and the release of all claims that were or could have been asserted in the Action, as a result of Plaintiffs' efforts, Covidien made certain Supplemental Disclosures recommended by Plaintiffs prior to the shareholder vote on the Transaction by filing a Form 8-K with the SEC on December 23, 2014. *See* Stipulation, Ex. A.   The Supplemental Disclosures contained material information which Plaintiffs considered important for Covidien shareholders to receive and be able to consider in deciding whether to vote in favor of the Transaction.   Specifically, the Supplemental Disclosures provided additional information concerning the following:

(i)      Covidien's ascription of value to Covidien's Irish domicile;

(ii)     the effect of the proposed new U.S. tax rules on any Medtronic plan to access future cash flows generated by its non-U.S. subsidiaries and its impact on Covidien's Board's evaluation of the Transaction;

(iii)    that, on October 20, 2014, Goldman Sachs confirmed to Covidien's Board that Medtronic's changes to its Contemplated Funding Structure did not affect Goldman Sach's view of the fairness of the Transaction; and

(iv)     Goldman Sach's' financial analysis of the Transaction, including (a) the *Illustrative Pro Forma Accretion/Dilution Analysis* performed by Goldman Sachs which assisted Covidien's Board in understanding whether the Transaction would be dilutive or accretive to Medtronic shareholders on a cash earnings per share basis; and (b) the *Analyst Price Targets* reviewed by Goldman Sachs, which noted that the price targets for Covidien ranged from $71.00 to $82.00 per share with a median price target of $80.00.

The Settlement directly addresses Plaintiffs' claims, and the terms of the Settlement were fairly, honestly, and aggressively negotiated by experienced securities counsel at arm's-length. Significant and substantial disclosure benefits were secured, and the benefits achieved far outweigh the uncertainties and the high costs of continued litigation and appeal.  Plaintiffs have considered the issues that would have been decided by a jury in the event of a trial, including whether the Defendants have committed or aided and abetted in the commission of any violation of law or engaged in any of the wrongful acts alleged in the Consolidated Action.  Plaintiffs and Plaintiffs' Counsel also considered the uncertain outcome and trial risk in complex lawsuits like this one, and that, even if they were successful, after the resolution of appeals that were certain to be taken (which could take years to resolve), the Transaction would already be consummated and Covidien shareholders deprived of the ability to make a fully informed decision regarding the Transaction.

## IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.     STANDARDS FOR PRELIMINARY APPROVAL

It is well settled that settlement of complex litigation is encouraged by the courts.  *See Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (recognizing a "'clear policy in favor of encouraging settlements'") (quoting *Metro. Hous. Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980)); *Durrett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (explaining that there is a strong policy favoring compromises that resolve litigation "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").

The settlement of a class action requires court approval.  Fed. R. Civ. P. 23(e).  The touchstone for court approval of a settlement is whether the proposed settlement is fair, reasonable, and adequate, and in the best interests of the corporation and its shareholders.  *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir. 1999).  Review of a proposed settlement requires a two-step process.  First, the Court makes "a preliminary determination" on the fairness of the settlement, directs "the preparation of notice," and sets the date for a hearing on final approval.  *Manual for Complex Litigation (Fourth)* ("MCL") §21.632 (2004).  Second, at the final approval stage, the Court decides whether the settlement is "fair, reasonable, and adequate."  *Id.*, §21.634.

The instant motion involves only the first step – preliminary approval.  In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is ***within the range*** of what might be found to be fair, reasonable, and adequate so that notice of the proposed Settlement should be given to stockholders and a hearing should be scheduled to consider final approval of the Settlement.  *See MCL* §13.14, at 173 ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing."); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("there is a range of reasonableness with respect to a settlement").  At the preliminary approval stage, the Court's review of the proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  As the *Manual for Complex Litigation* explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive

compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995).

A review of the terms of the Settlement lends support to the Parties' belief that the proposed Settlement is within the range of possible approval.

## B. THE SUPPLEMENTAL DISCLOSURES PROVIDED VALUABLE BENEFITS TO COVIDIEN SHAREHOLDERS

It is a fundamental tenet of corporate law that shareholders are entitled to be fully informed of all material facts concerning transactions requiring their approval. *See, e.g.*, *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) (explaining that it is a "well-recognized proposition that directors of ... corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action"). Once a board voluntarily makes a partial disclosure, it has "an obligation to provide the stockholders with an accurate, full, and fair characterization" of the facts relating to that partial disclosure. *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1280 (Del. 1994). The materiality of disclosures is assessed by how important a reasonable shareholder would consider the information in deciding how to vote. *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 439 (1976).

Courts view the obtaining of material disclosures for shareholders in the context of extraordinary corporate transactions involving stock as a valuable non-monetary benefit. *See In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998) ("[T]he terms of the settlement requiring the publication and dissemination of the supplemental disclosure provided a substantial, although nonmonetary and unquantifiable, benefit to the members of the class."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970). Facts relating to the sale and negotiation process are material to shareholders because they are critical to

a determination regarding the adequacy or inadequacy of the Company's negotiations for the best price on behalf of shareholders. *See Nagy v. Bistricer*, 770 A.2d 43, 60 (Del. Ch. 2000) (holding that shareholders were entitled to an accurate description of the "process" directors used "in coming to their decision to support the Merger").

Without a doubt, full and accurate disclosure was important here, as the shareholders of Covidien had to decide how to vote on the Transaction. Plaintiffs' efforts resulted in Covidien making significant and numerous additional disclosures to assist shareholders in making this determination. The information was material because shareholders are entitled to know whether the Board adequately discharged its duties to secure the best price possible for shareholders, including whether it adequately explored all opportunities to enter into an alternative transaction and did the best it could to secure the highest price possible.

### C. THE SETTLEMENT WAS REACHED AFTER SIGNIFICANT ARM'S-LENGTH NEGOTIATIONS

Here, the proposed Settlement is the product of arm's-length negotiations by counsel with significant experience and expertise in shareholder and other complex class action litigation and after Plaintiffs' Counsel vigorously pursued this litigation from its inception. Plaintiffs' Counsel, among other things, conducted an extensive investigation of defendants' actions in connection with the Transaction over a truncated time frame; including a thorough review and analysis of all relevant SEC filings, press releases, and analyst reports regarding the Transaction, Covidien and Medtronic; prepared and filed initial complaints; prepared consolidation papers; reviewed and analyzed confidential documents of Covidien; entered into a confidentiality stipulation; consulted with financial experts; and drafted letters demanding that defendants fully disclose all material information and conducted substantial negotiations with counsel for defendants regarding the disclosure of this information.

Plaintiffs' Counsel also engaged in sufficient discovery and investigation which allowed them to assess the fairness and reasonableness of the proposed Settlement.  In order to confirm the fairness and reasonableness of the Settlement, Defendants provided Plaintiffs' Counsel with certain non-public documents, including multiple presentations prepared by Goldman Sachs for Covidien's Board, minutes from meetings of the Covidien Board at which the Transaction was discussed, and copies of emails between members of the Board discussing the Transaction and potential alternative transactions.  Plaintiffs' Counsel also took the depositions of Covidien Board member Randall J. Hogan, III and Paresh Lala, a representative of Goldman Sachs.   These depositions provided background on the process leading up to, and the negotiation and approval of, the Transaction and its terms, along with any analysis performed concerning the fairness of the Transaction.

Based on their experience and after a complete evaluation of the information obtained through their own independent investigation and the discovery provided by Defendants, Plaintiffs' Counsel believe that the proposed Settlement is a beneficial result for the Settlement Class and should be preliminarily approved.  *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("there is a presumption in favor of the settlement" if the parties negotiated it at arm's-length, after conducting meaningful discovery); *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. Jan. 10, 2000) ("The proponents of a class settlement can obtain 'a strong initial presumption that the compromise is fair and reasonable' by establishing that the settlement was reached after arm's-length negotiations") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).   The proposed Settlement is the product of significant give and take by the parties and its fairness, reasonableness, and adequacy have been confirmed through sufficient discovery and investigation of the applicable facts and law.   While the Parties believe the Settlement

ultimately warrants final approval, the Court need not make that determination at this time.  The Court is being asked only to permit notice of the terms of the Settlement to be provided to the Settlement Class, to preliminarily certify a class for purposes of Settlement only, and schedule a hearing to consider any views expressed by Class members.  Consequently, the Settlement warrants preliminary approval by the Court.

## V.      PRELIMINARY CLASS CERTIFICATION IS APPROPRIATE

The Court must also determine whether to certify the Class for settlement purposes. *See Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 101 (D. Mass. 2010). As courts in this District have noted, securities actions are particularly suited for class certification under Rule 23. *See, e.g., In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 280 (D. Mass. 2009) ("Courts have recognized that class actions may be particularly appropriate in the context of securities litigation."); *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005) ("Courts have expressed a general preference for class certification in securities fraud cases based on a policy favoring enforcement of the federal securities laws and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights." (citation omitted)).

Plaintiffs seek class certification of the proposed Settlement Class pursuant to Fed. R. Civ P. 23(a) and 23(b)(3). *See Smilow* v. *Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003).  The Court must find that the requirements of numerosity, commonality, typicality and adequacy of representation are met. *See In re StockerYale, Inc. Sec. Litig.*, 2007 WL 2410361, at *1 (D.N.H. Aug. 21, 2007).  Plaintiffs submit that the Class satisfies each of the requirements as set forth below.

### A.    THE REQUIREMENTS OF RULE 23(A) ARE MET

#### 1.   The Proposed Class is Sufficiently Numerous

Rule 23(a) requires that plaintiff demonstrate that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).  According to the Transaction Agreement, as of June 12, 2014, there were more than 451 million shares of Covidien common stock outstanding.  These shares were owned by thousands of individual shareholders geographically disbursed across the country.  *See In re Relafen Antitrust Litig.,* 218 F.R.D. 337, 342 (D. Mass. 2003) (finding that 40 members individuals generally satisfies numerosity requirement). Accordingly, the numerosity requirement of Rule 23(a) is clearly satisfied by a showing of a large amount of outstanding shares. *See In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 248 (D. Mass. 2007) (stating that in a securities class action, a lead plaintiff can generally demonstrate numerosity on the basis of a large number of shares outstanding and traded).

#### 2.   Questions of Law and Fact are Common to the Class

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). "While at least one common issue of fact or law at the core of the action must shape the class, Rule 23(a) does not require that every class member share every factual and legal predicate of the action." *In re Lupron Mktg. & Sales Practices Litig*., 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted).   In *Lupron*, the Court added that "[t]he threshold of 'commonality' is not high. Aimed in part at 'determining whether there is a need for combined treatment and a benefit to be derived therefrom,' the rule requires only that resolution of the common questions affect all or a substantial number of the class members." *Id*. (citations omitted).

Here, the issues common to the Class include, but are not limited to: (i) whether Individual Defendants engaged in acts or conduct in violation of the securities laws, including but not limited

to whether the proxy materials issued to Covidien shareholders in connection with the Transaction contained material misstatements or omissions in violation of sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"); (ii) whether the Individual Defendants oppressed Covidien shareholders in connection with the Transaction by: (a) failing to take steps to maximize the value of Covidien to its public shareholders; (b) failing to properly value Covidien and its various assets and operations; and/or (c) failing to protect Covidien shareholders against numerous conflicts of interest; (iii) whether the Individual Defendants engaged in acts or conduct in violation of fiduciary duties to members of the Class in connection with the sale of Covidien to Medtronic, including their duty to fully and fairly disclose all material information to shareholders; and (iv) and whether Medtronic and its affiliates aided and abetted those alleged breaches.  Given that these legal issues are shared by Class Members and are based on a common core of salient facts, the commonality requirement is met.  Plaintiffs' claims present many questions of law and fact common to all members of the Class, therefore the Rule 23(a)(2) commonality requirement is met.

### 3.   Plaintiffs' Claims are Typical of the Class' Claims

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Accordingly, to meet the requirement of typicality, the class representatives' claims must "arise from the same event or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." *See In re Transkaryotic Therapies, Inc. Sec. Litig.,* 2005 WL 3178162, at *3 (D. Mass. Nov. 28, 2005). Typicality, however, "does not require that the representative plaintiff's claims be identical to those of absent class members." *See In re Credit-Suisse-AOL Sec. Litig.,* 253 F.R.D. 17, 23 (D. Mass. 2008). The typicality inquiry "is designed to align the interests of the class and class representatives so that the latter will work to benefit the

entire class through the pursuit of their own goals." *Hochstadt*, 708 F.Supp.2d. at 103 (citation omitted).

Here, Plaintiffs' claims against Defendants are typical because the alleged damages arise from the same course of misconduct—Covidien's sale of itself to Medtronic pursuant to an unfair process and materially flawed shareholder solicitation material.  Plaintiffs' claims are "typical" because they are based on the same legal theory as that of the other Class Members.  *See Hochstadt*, 708 F. Supp. 2d at 103.  Therefore, Plaintiffs' interests in the litigation are representative of the interests of the Class.

### 4.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement pursuant to Rule 23(a)(4) is met in this litigation because Plaintiffs will fairly and adequately protect the interests of the Class. The First Circuit has articulated two criteria for determining adequacy: (1) whether the plaintiffs' counsel is qualified, experienced and generally able to vigorously conduct the litigation; and (2) whether the class representative has no conflicts with the interests of absent class members. *See Hochstadt*, 708 F. Supp. 2d at 103

Here, Plaintiffs' Counsel have demonstrated that they have significant experience and are fully prepared to represent the Class to the best of their abilities.  Plaintiffs' Counsel have expertise in complex litigation and class action proceedings throughout the United States and have demonstrated their excellent ability to conduct this litigation – engaging in  discovery in consultation with their experts and securing the Supplemental Disclosures prior to the shareholder vote on the Transaction for the benefit of a fully informed body of Covidien shareholders.  *See Swack*, 230 F.R.D. at 267 (finding that the plaintiff "easily satisfie[d] the second prong of the adequacy test, which assesses whether counsel chosen by the representative party is qualified,

experienced and able to vigorously conduct the proposed litigation" as counsel had "broad-based experience in complex litigation, including experience in securities fraud class actions. . .").

Moreover, Plaintiffs are well-suited to serve as Class Representatives for settlement purposes because their interests do not conflict with any members of the Class. A party's interests will only be deemed antagonistic to those of the rest of the class if the conflict is fundamental— going to the specific issues in controversy. 1 Newberg & Conte, NEWBERG ON CLASS ACTIONS §3.25 at 3-319 to 141; §3.26 at 3-143 to 144 (3d ed. 1992). Indeed, given that Plaintiffs' claims are identical to that of the other Class Members and subject to no unique defenses, there is no question of the lack of conflict of interests. *See In re Relafen*, 218 F.R.D. at 343 (finding that no conflict exists when the asserted claims are typical of those of the class, cause similar injuries, are suffered during the same period and arise from the same conduct). Plaintiffs and the Class share a common goal and there is no conflict between them; therefore the adequacy requirement is also met. Accordingly, the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy are easily met in this litigation.

## B.  THE REQUIREMENTS OF RULE 23(B)(3) ARE MET

Pursuant to Rule 23(b)(3), the Court must consider: (1) whether issues of law or fact common to class members predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.  Common Questions of Law and Fact Predominate

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor,* 521 U.S. 591, 594 (U.S. 1997). The rule "requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39. Additionally, some types of cases are uniquely

well-suited to class adjudication, and "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem,* 521 U.S. at 625.

As demonstrated above, the Action involves both questions of law and fact common to the Class. Plaintiffs submit that there are no significant individual issues in this case and that a common nucleus of facts and law dominate the Consolidated Action. Where class members are subject to the same alleged misrepresentations and omissions and it is alleged that defendants' misrepresentations were part of a common course of conduct, common questions predominate. *See Randle v. Spectran*, 129 F.R.D. 386, 393 (D. Mass. 1988) (holding that "common questions with respect to the existence and materiality of misleading statements or omissions in documents or press releases concerning [corporation's] securities, along with the related questions of defendants' liability for such alleged statements or omissions, predominate over any individual questions in this action.").

## 2.   A Class Action in the Superior Method of Adjudication

The class action device is the superior method for resolving the claims in this action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities laws. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "[m]ost of the plaintiffs would have no realistic day in court if a class action were not available"). Rule 23(b)(3)'s superiority requirement dictates that the following four factors are pertinent: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by…class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23 (b)(3).

It is clearly desirable to concentrate the claims of all Class Members in this forum, and Plaintiffs do not foresee any difficulties in the management and settlement of this action as a class action. The alternative to certifying the class for settlement purposes would be to unleash hundreds, if not thousands, of individual actions into the judicial system which could result in varying adjudications of liability, or risk that many Class Members would be unable to seek redress because they could not afford to proceed on an individual basis.[5] In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied and thus, the Court should certify this Class for settlement purposes.[6]

## VI.   THE PROPOSED NOTICE FAIRLY APPRISES THE SETTLEMENT CLASS MEMBERS OF THE TERMS OF THE SETTLEMENT

Rule 23(e) specifies that notice of the proposed settlement must be given to all class members in such manner as the court directs.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620-21 (U.S. 1997).  Due process requires that Class Members be apprised of their rights with respect to the proposed Settlement, be provided with enough information to make an informed decision and be afforded a full and fair opportunity to participate in the proceedings to determine whether the proposed Settlement should be given final approval.  *See Bennett v. Roark Capital Group, Inc.*, 2011 WL 1627939, at *2 (D. Me. Apr. 27, 2011). Here, the proposed form and manner of the Notice satisfy these requirements.

---

[5] *See Swack*, 230 F.R.D. at 273 ("Clearly, the piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues . . . would be an inefficient allocation of court resources.").

[6] Additionally, Rule 23(g)(1) states that, "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Plaintiffs' Counsel satisfies the requirements of Rule 23(g) and should be appointed as Class Counsel. As discussed above, WeissLaw LLP and Levi & Korsinsky LLP have fairly and adequately represented the Class and will continue to do so. Proposed Class Counsel is knowledgeable about the applicable law, is experienced in handling class actions, has performed substantial work in vigorously pursuing the Class' claims here, and has committed substantial resources to representing the Class.  *See* Fed. R. Civ. P. 23(g)(1)(B).

Subject to the Court's approval, the Settlement Class members will be notified of the Settlement Hearing and apprised of their rights relating to the Settlement Hearing and the Settlement by the notice in a form and manner approved by the Court. *See* Stipulation, Ex. C. The proposed Notice has been carefully drafted in plain language to contain all necessary information. The Notice clearly advises recipients of their legal rights and obligations, including the procedure for objecting to the Settlement, and will provide specifics on the date, time, and place of the Settlement Hearing.  *See Hochstadt*, 708 F. Supp. 2d at 110 (finding the proposed class notice to be proper because it gave background information, accurately stated legal rights and options and explained the allocation plan).  Plaintiffs' Counsel believe that, because the Notice fairly apprises the Class of their rights with respect to the Settlement, it represents the best notice practicable under the circumstance sand should be approved by the Court.

## VII.    PROPOSED SCHEDULE

In connection with the Scheduling Order, the Parties are requesting that the Court establish dates by which notice of the Settlement will be distributed to Settlement Class Members, dates by which shareholders may comment on the Settlement and a date on which the Court will hold a Final Settlement Hearing. Plaintiffs' Counsel respectfully submit the following procedural schedule for the Court's review and approval which summarizes the deadlines in the proposed Scheduling Order:

i.      The date of the Settlement Hearing shall be set by the Court at least sixty calendar days after the Notice is mailed;

ii.     Plaintiffs shall file their papers in support of final approval of the Settlement and any Fee application no later than twenty-one (21) calendar days before the Settlement Hearing;

iii.    Covidien or its successor(s) shall, no later than fifteen (15) calendar days before the settlement Hearing, file appropriate affidavits of proof of mailing of the Notice;

iv.     Objections to the Settlement or Fee Application shall be filed and served no later than ten (10) calendar days of the Settlement Hearing; and

v.      Plaintiffs shall file their reply papers in support of the Settlement and Fee Application no later than seven (7) calendar days before the Settlement Hearing.

## VIII.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Scheduling Order granting: (i) preliminary approval of the Settlement; (ii) provisional certification of the Class for purposes of the Settlement; (iii) provisional appointment of  Plaintiff Rosenfeld Family Foundation as Class Representative and WeissLaw LLP and Levi & Korsinsky LLP as Class Counsel; (iv) approval of the form and manner of giving notice of the proposed Settlement to the Class; and (v) a time and date for the Settlement Hearing to consider final approval of the Settlement and related matters.

Respectfully submitted,

Dated:  May 15, 2015                    **BLOCK & LEVITON, LLP**

By:   */s/Mark A. Delaney*
Jason M. Leviton
Mark A. Delaney
155 Federal Street, Suite 400
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020
Jason@blockesq.com
Mark@blockesq.com

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, NY 10036
Tel.: (212) 682-3025
Fax: (212) 682-3010
racocelli@weisslawllp.com
mrogovin@weisslawllp.com
kkeenan@weisslawllp.com

**LEVI & KORSINSKY LLP**
Shannon L. Hopkins
30 Broad Street, 24th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
shopkins@zlk.com

*Counsel for Lead Plaintiff and Proposed Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: May 15, 2015

*/s/ Mark A. Delaney*
Mark A. Delaney