**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE COVIDIEN PLC SECURITIES LITIGATION | CASE NO. 1:14-CV-12949-LTS |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND AWARD OF ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 4

   A.  The Merger, Litigation, Settlement Negotiations, and Confirmatory Discovery ............... 4

   B.  Preliminary Approval and the Issuance of the Notice ........................................ 4

III.  TERMS AND BENEFITS OF THE PROPOSED SETTLEMENT ..................................... 5

IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT .............. 8

   A.  The Complexity, Expense, and Likely Duration of the Litigation ..................................... 9

   B.  The Reaction of the Class Supports the Settlement ......................................................... 10

   C.  The State of the Proceeding at Which Settlement Was Reached...................................... 11

   D.  Lead Plaintiff Faced Great Risks in Establishing Liability and Damages......................... 12

   E.  The Risks of Maintaining the Class Action through Trial ................................................. 13

   F.  The Ability of the Defendants to Withstand a Greater Judgment...................................... 14

   G.  The Reasonableness of the Settlement in Light of the Best Possible Outcome and the
       Attendant Risks of Litigation Support the Settlement ........................................................ 14

V.    A SETTLEMENT CLASS SHOULD BE CERTIFIED ......................................... 15

VI.   THE FORM AND METHOD OF NOTICE WERE ADEQUATE ..................................... 16

VII.  LEAD PLAINTIFF'S APPLICATION FOR NEGOTIATED ATTORNEYS' FEES AND
       REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED..................................... 16

   A.  Negotiated Attorneys' Fees are Favored by Courts .......................................................... 16

   B.  The *Johnson* Factors Confirm the Reasonableness of the Fee Request............................ 18

       1.  The Time and Labor Required ..................................................................................... 19

       2.  The Novelty and Difficulty of the Questions .............................................................. 19

       3.  The Skill Required to Perform the Legal Services....................................................... 20

       4.  The Customary Fee and the Size of Awards in Similar Cases..................................... 21

       5.  The Contingent Nature of the Fee and Risk of Nonpayment ....................................... 22

6.   The Amount Involved and the Results Obtained ............................................................ 22

7.   A Lodestar Cross-Check Supports the Requested Fee.................................................... 23

VIII. CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Bussie v. Allmerica Fin. Corp.*,
  50 F. Supp. 2d 59 (D. Mass. 1999) ...................................................................... 10

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ........................................................................... 9, 14

*City of Detroit v. Grinnell Corp.*,
  550 F.2d 1093, 1098 (2d. Cir. 1977) .......................................................... 9, 14, 23

*City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*,
  100 F.3d 1041 (1st Cir. 1996) ............................................................................... 9

*Coutin v. Young & Rubicam P.R.*,
  124 F.3d 331, 337 n.3 (1st Cir. 1997) .................................................................. 18

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .................................................................................. 14

*David P. Simonetti Rollover IRA v. Margolis*,
  2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008) ................................................. 8

*DiGiacomo v. Plains All Am. Pipeline*,
  No. H-99-4137, 2001 U.S. Dist. LEXIS 25532, at *35 (S.D. Tex. Dec. 19, 2001) ................ 23

*Ehrlich v. Phase Forward Inc.*,
  80 Mass. App. Ct. 671, N.E.2d 912 (2011) ............................................................ 2

*Evans v. Jeff D.*,
  475 U.S. 717 (1986) ............................................................................................. 9

*Fogarazzo v. Lehman Bros., Inc.*,
  2011 U.S. Dist. LEXIS 17747 (S.D.N.Y. Feb. 23, 2011) ....................................... 19

*Fundamental Partners, et. al., v. Charles Baker, et. al.*,
  Case No. RG14733959 (Cal. Super. Feb. 27, 2015).............................................. 22

*Golebiowski v. Mega Life & Health Ins. Co.*,
  No. 3:04-cv-00831-G, 2005 U.S. Dist. LEXIS 614, at *8 (N.D. Tex. Jan. 14, 2005) ............. 23

*Gulbankian v. MW Mfrs., Inc.*,
  2014 WL 7384075 (D. Mass. Dec. 29, 2014) ...................................................................... 9, 10

*Hensley v. Eckerhart*,
  461 U.S. 424, 437 (1983) ................................................................................................... 18, 23

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................................ 9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................................................................... 11, 13

*In re Atheros Commc'ns, Inc. S'holder Litig.*,
  C.A. No. 6124VCN, 2011 WL 864928, at *8 (Del. Ch. Mar. 4, 2011) ................................... 7

*In re AXA Fin., Inc. S'holders Litig.*,
  No. 18268, 2002 WL 1283674, at *7 (Del. Ch. May 22, 2002) ............................................. 17

*In re Bausch & Lomb Sec. Litig.*,
  183 F.R.D. 78 (W.D.N.Y. 1998) ........................................................................................... 12

*In re Celera Corp. S'holder Litig.*,
  Consol. C.A. No. 6304, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012) ......................... 21

*In re Charter Commc'ns, Inc., Sec. Litig.*,
  2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) ....................................................... 21

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003) ........................................................................................... 8, 9

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 U.S. Dist. LEXIS 63342 (E.D.N.Y. June 24, 2010) ....................................................... 19

*In re Entrust S'holder Litig.*,
  DC-09-04802-B, 44th Judicial District, Dallas County ....................................................... 24

*In re Epoch Hohlding Corp. S'holder Litig.*,
  C.A. No. 8144-VCP (Del. Ch. Nov. 1, 2013) ...................................................................... 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 18, 2010) ................................................................. 13, 14

*In re Gilat Satellite Networks, Ltd.*,
   2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007)........................................................ 9

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................... 20

*In re Independent Energy Holdings PLC*,
   2003 WL 22244676 (S.D.N.Y. Sep. 29, 2003) .............................................. 13, 15

*In re Labarge, Inc. S'holder Litig.*,
   Consol. C.A. No. 6368-VCN, (Del. Ch. Jan. 3, 2012) ........................................ 21

*In re Lupron Marketing and Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) ............................................................................ 10

*In re Lupron Marketing and Sales Practices Litig.*,
   2005 WL 2006833 (D. Mass. Aug. 17, 2005) ...................................................... 22

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................... 12

*In re Netsmart*,
   924 A.2d 202 (Del. Ch. 2007).............................................................................. 8

*In re Nortel Networks Corp. Sec. Litig.*,
   2006 WL 3802198 (S.D.N.Y. Dec. 26, 2006)...................................................... 10

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................... 11, 13

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52, 2005 U.S. Dist. LEXIS 21630, 2005-2 Trade Cas. (CCH) P74,962
   (D. Mass. 2005) .................................................................................................... 23

*In re Sauer-Danfoss Inc. S'holders Litig.*,
   No. 5162-VCL, 2011 WL 2519210, at *21, *Appendices A-C* (Del. Ch. Apr. 29, 2011) ......... 21

*In re StockerYale, Inc. Sec. Litig.*,
   2007 WL 4589772 (D.N.H. Dec. 18, 2007) ................................................... 10, 13

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ........................................................... 24

*In re Supertex, Inc. S'holder Litig.*,
   Case No. 1-14-CV-261747 (Cal. Super. Sept. 14, 2014)........................................................ 21

*In re Talley Indus., Inc. S'holders Litig.*,
   No. 15961, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998)................................................ 3

*In re Top Tankers, Inc. Sec. Litig.*,
   2008 WL 2944620 (S.D.N.Y. Jul. 31, 2008) ........................................................................ 13

*In re Tyco Int'l Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)................................................................................ 8, 9, 23

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................................................ 15

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)............................................................................................ 14

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714, 720 (5th Cir. 1974)...................................................................................... 18

*Malchman v. Davis*,
   761 F.2d 893 (2d Cir. 1985) ............................................................................................ 17

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................ 12

*Malpiede v.Townson*,
   780 A.2d 1075 (Del. 2001) ................................................................................................ 2

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
   C.A. No. 5402-CS (Del. Ch. Jan. 25 2011) .......................................................................... 21

*Nagy v. Bistricer*,
   770 A.2d 43, 60 (Del. Ch. 2000) ........................................................................................ 7

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
   602 F. Supp. 2d 277, 280 (D. Mass. 2009) .......................................................................... 8

*NSL Mgmt. v. Gorman*,
   Docket No. C-48-08 (Sup. Ct. N.J. Jan. 20, 2009)................................................................ 23

*Puerto Rico Dairy Farmers Ass'n v. Pagan*,
   748 F.3d 13 (1st Cir. 2014)................................................................................ 9

*Smiley v. Sincoff*,
   958 F.2d 498, 501 (2d Cir. 1992) ..................................................................... 18

*Wagenmann v. Adams*,
   829 F.2d 196 (1st Cir. 1987)............................................................................ 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d, 2005 U.S. App. LEXIS 74, 2005-1 Trade Cas. (CCH) P74,661
   2d Cir. N.Y. 2005)............................................................................................ 14

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224, 255 (2001)..................................................................... 24

**Statutes**

Fed. R. Civ. P. 23 ...................................................................................................... 15

## I.    INTRODUCTION

Court-appointed Lead Plaintiff[1] Rosenfeld Family Foundation, supported by plaintiffs in the consolidated action, Joseph Lipovich and Richard Taxman (collectively, "Plaintiffs"), on behalf of itself and the Class[2], submits this memorandum of points and authorities in support of final approval of the Settlement, as set forth in the Stipulation of Settlement dated May 15, 2015 (the "Stipulation") and as preliminarily approved by this Court on May 19, 2015.  The Settlement was achieved only after hard-fought litigation and extensive efforts by Plaintiffs' Counsel.  Over the course of the litigation, Co-Lead Counsel, along with Plaintiffs' Counsel in an accelerated time frame have conducted an extensive investigation of the claims asserted, including the review of non-public discovery, consultation with financial experts and the depositions of key witnesses.

The Settlement provides for certain supplemental disclosures regarding the Transaction with Medtronic.  These disclosures, which are set forth in more detail below and attached as Exhibit A to the Stipulation, included material information regarding the background of the Transaction, the sales process that led to the Transaction, potential tax implications of the Transaction, and the financial analyses and valuations performed by the Company's financial

---

[1] Plaintiff Rosenfeld Family Foundation moved pursuant to Section 21(d)(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by Section 1010(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for appointment as Co-Lead Plaintiff, along with Ronald W. Chartrand.  The Court appointed the two parties Co-Lead Plaintiffs on November 14, 2014.  On May 7, 2015, Ronald W. Chartrand moved to withdraw as Co-Lead Plaintiff.  That motion was granted by the Court on May 11, 2015 and Rosenfeld Family Foundation remains in the present action as Lead Plaintiff for the Class, as defined herein.

[2] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation of Settlement and Release, attached as Exhibit 1 to the Declaration of Mark A. Delaney in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Dkt. No. 42) (the "Stipulation"). The Class stipulated to by the Parties, and preliminarily certified by the Court, is defined as any and all persons and entities who held shares of Covidien common stock, either of record or beneficially, at any time between June 14, 2014 (the date the Covidien Board of Directors approved the Transaction) and January 26, 2015 (the date of the consummation of the Transaction), including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under any of them, other than the Defendants, their subsidiary companies, affiliates, assigns, and members of their immediate families, as the case may be.

advisor, Goldman Sachs & Co. ("Goldman Sachs") in support of its fairness opinion (the "Supplemental Disclosures").  *See* Stipulation, Ex. A.  This information was material because shareholders were entitled to know whether Covidien's Board of Directors ("Board") adequately discharged its fiduciary duties owed to the Company's shareholders, including whether it took all steps to secure the highest price possible and whether it was satisfying its duty of candor. Plaintiffs' Counsel have concluded that the Supplemental Disclosures provided Covidien shareholders with material information sufficient to make a fully-informed decision as to whether to vote in favor of the Transaction.

Through the settlement of this litigation, Lead Plaintiff ensured that Covidien's former shareholders had these corrective disclosures at their disposal at the time of making the momentous decision on the fate of the Company's independent existence.  The courts of Massachusetts and Delaware, where similar actions are often litigated, have recognized that it is a fundamental tenet of corporate law that shareholders are entitled to be fully informed of all material facts concerning transactions requiring their approval.  *See, e.g., Ehrlich v. Phase Forward Inc.*, 80 Mass. App. Ct. 671, 955 N.E.2d 912 (2011) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1086 (Del. 2001)) ("When issuing a proxy statement, 'the board is obligated to disclose fully and fairly all material information within the board's control.'").  Indeed, disclosure of information that informs a shareholder's decision about whether to vote in favor of a corporate takeover has been held to be even more important than monetary relief:

> [T]he timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process.

*In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998).  As discussed further below, Lead Plaintiff's request for an unopposed award of fees and expenses of $540,000 is consistent with fee awards in similar cases

Plaintiffs' Counsel, all of whom are well-respected and experienced in prosecuting shareholder class actions, have concluded that the Settlement achieves all of the goals of the Consolidated Action and, therefore, is the best possible result for members of the Settlement Class.  Accordingly, Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate and should be finally approved.

Additionally, the reaction to the Settlement has been extremely favorable.  Although the September 11, 2015 deadline to object has not passed, as of the date of this filing, ***there has not been a single substantive objection*** to the Settlement.[3]   For this reason and for those set forth below, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, certify the Settlement Class, approve the requested fees and expenses award, and enter the proposed Order and Final Judgment.

---

[3] As of the date of this filing, only one Covidien shareholder, Graham Newhouse who is a citizen of the United Kingdom, has served a purported objection to the Settlement.  *See* Declaration of Jason Leviton in Support of Lead Plaintiff's Unopposed Motion for Final Approval of Settlement, Class Certification, and Award of Attorneys' Fees ("Leviton Decl."), filed concomitantly herewith, Ex. 6.  Mr. Newhouse's objection is purely administrative in nature and relates solely to the U.S. backup withholding of the consideration paid to him.  Indeed, Mr. Newhouse's objection is completely unrelated to the Transaction itself, or whether the Covidien Board breached its fiduciary duties to Covidien shareholders.  Rather, Mr. Newhouse alleges that U.S. backup withholding was improperly withheld from the cash portion of the consideration that he received.  The parties did not intend for the Release of claims in the Stipulation to release any shareholder claims related to U.S. backup withholding.  Plaintiffs' Co-Lead counsel have opened a dialogue with Mr. Newhouse and counsel for Defendants regarding Mr. Newhouse's objection and are working to help resolve the issues Mr. Newhouse raised in his objection.

## II.    STATEMENT OF FACTS

### A.    THE MERGER, LITIGATION, SETTLEMENT NEGOTIATIONS, AND CONFIRMATORY DISCOVERY

A detailed description of the factual background and procedural history of the Consolidated Action, as well as the efforts of Plaintiffs' Counsel on behalf of the Settlement Class that resulted in the Settlement, is set forth in Section II of the Memorandum of Law in Support Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Dkt. Entry No. 41).  For the sake of brevity, it is not repeated here, but rather incorporated by reference.

### B.    PRELIMINARY APPROVAL AND THE ISSUANCE OF THE NOTICE

On May 15, 2015, Lead Plaintiff filed its Motion for Preliminary Approval, requesting that the Court enter the [Proposed] Order for Notice and Scheduling of Hearing on Settlement ("Scheduling Order"): (i) granting preliminary approval of the Settlement of the Action as embodied in the Stipulation; (ii) preliminarily certifying a non-opt out class for settlement purposes and appointing class representatives and class counsel; (iii) approving the form and manner of notice of the Settlement to Covidien Shareholders; and (iv) setting a hearing for final approval of the Settlement ("Settlement Hearing").  The Court granted the motion on May 19, 2015, directed Notice be sent to the Settlement Class, and scheduled a Settlement Hearing for July 29, 2015 (Dkt. Entry No. 44).  On May 26, 2015, the Parties jointly moved the Court to continue the Settlement Hearing until September 21, 2015, which the Court granted on May 28, 2015.  Pursuant to the Court's Preliminary Approval Order, Notice was mailed out to the Settlement Class by Garden City Group, LLC, a notice administrator hired by Defendants, during the period July 2, 2015 to August 14, 2015.[4]

---

[4] Information based on the draft Affidavit of Jose C. Fraga Regarding the Mailing of the Notice of Pendency of Class Action, Proposed Settlement of Class Action and Settlement Hearing.  The finalized version of Mr. Fraga's affidavit (the "Fraga Aff.") is due to be filed with the Court on Friday, September 4, 2015.

The Notice clearly and concisely described, in plain and easily understood language, the nature of the Action and the claims alleged in the Action, the definition of the Settlement Class, the terms of the proposed Settlement, including payment of Plaintiffs' attorneys' fees and litigation expenses, and the reasons for the Settlement.  In addition, the Notice explained that any Class member who so desired could enter an appearance through an attorney and the process by which Class members could object to the Settlement.

Although the September 11, 2015 deadline for objections has not yet passed, as of the date of this filing, no substantive objections have been received to any of the terms of the Settlement, or requested fees and expenses.  *See* footnote 3, *supra*.  Lead Plaintiff submits that this is evidence of the proposed Settlement's fairness and adequacy, particularly given the comprehensive Notice provided to Covidien shareholders.

## III.     TERMS AND BENEFITS OF THE PROPOSED SETTLEMENT

As a result of the efforts of Plaintiffs and their counsel in prosecuting this action, Covidien shareholders were provided with significant and material disclosures that enabled them to make a fully informed decision on the Transaction.  In prosecuting this action, Co-Lead Counsel: (1) moved and was appointed to lead the action on behalf of similarly situated Covidien shareholders; (2) coordinated efforts amongst Plaintiffs in the various related actions; (3) negotiated with defendants the timing and scope of discovery; (5) reviewed certain non-public documents including, *inter alia*, documents relating to the process leading up to the Transaction and the valuation of the Company, including the Company Board presentation materials and the financial analyses of the Company's financial advisor, Goldman Sachs; (6) consulted with financial and valuation experts (7) negotiated the Settlement; and (8) took the depositions of Individual Defendant and former Covidien Board member Randall J. Hogan and Paresh Lala of Goldman

Sachs.  It was only after these efforts that Co-Lead Counsel ultimately determined to seek approval of the Settlement based on the Supplemental Disclosures.

As a direct result of Plaintiffs' pursuit of this matter, Defendants agreed to disclose additional material information in the Supplemental Disclosures in advance of the January 6, 2015 special meeting of Covidien shareholders (the "Meeting").  Defendants acknowledge that the pendency and prosecution of the Consolidated Action and the efforts of Plaintiffs' Counsel were the sole cause for the dissemination of the Supplemental Disclosures. *See* Stipulation ¶ 1.  Absent Plaintiffs' and their counsels' intervention, Covidien shareholders would have been forced to make the decision whether to vote to approve the transaction without all material information at their disposal.

Generally, the material information contained in the Supplemental Disclosures included information relating to:  (i) Covidien's ascription of value to Covidien's Irish domicile; (ii) the effect of the proposed new U.S. tax rules on any Medtronic plan to access future cash flows generated by its non-U.S. subsidiaries and its impact on Covidien's Board's evaluation of the Transaction; (iii) that, on October 20, 2014, Goldman Sachs confirmed to Covidien's Board that Medtronic's changes to its Contemplated Funding Structure did not affect Goldman Sachs' view of the fairness of the Transaction; and (iv) Goldman Sachs' financial analysis of the Transaction, including (a) the *Illustrative Pro Forma Accretion/Dilution Analysis* performed by Goldman Sachs which assisted Covidien's Board in understanding whether the Transaction would be dilutive or accretive to Medtronic shareholders on a cash earnings per share basis; and (b) the *Analyst Price Targets* reviewed by Goldman Sachs, which noted that the price targets for Covidien ranged from $71.00 to $82.00 per share with a median price target of $80.00.  These Supplemental Disclosures, both individually and collectively, conferred a material and substantial benefit upon Covidien's

public shareholders and allowed them to cast a fully informed vote on the Transaction. The significant and material benefits conferred by disclosures of these types is well-recognized by an ample body of applicable law.

Importantly, the Supplemental Disclosures allowed Covidien's shareholders to see a more complete picture of the facts and circumstances leading up to the execution of the Merger Agreement and the reasons for the Board's decision to support the Transaction. This was important information that the shareholders required to make an informed decision. *See Nagy v. Bistricer*, 770 A.2d 43, 60 (Del. Ch. 2000) (holding that shareholders are entitled to an accurate description of the "process" directors used "in coming to their decision to support the Merger"). *See also In re Atheros Commc'ns, Inc. S'holder Litig.*, C.A. No. 6124VCN, 2011 WL 864928, at *8 (Del. Ch. Mar. 4, 2011). In short, once the Company made its initial statements regarding, for example, of the value ascribed to the Company's Irish domicile, the Board had an obligation to flesh out those disclosures to the extent possible to fully inform shareholders of all its considerations. "[O]nce a board voluntarily makes a partial disclosure, it has 'an obligation to provide the shareholders with an accurate, full, and fair characterization' of the facts relating to that partial disclosure." *Id.* (quoting *Arnold*, 650 A.2d at 1280). Because the Company initially made incomplete disclosures on these topics, the Supplemental Disclosures were material to provide the Covidien shareholders with a full characterization of the key factors that led to Covidien entering into the Merger Agreement.

Furthermore, the previously undisclosed financial analyses performed by Goldman Sachs in its evaluation of the fairness of the Transaction were vital to the ability of Covidien's shareholders to stand in the shoes of the Board and properly evaluate the Transaction before determining to end the Company's independent existence. As the Delaware Court of Chancery

has previously recognized:

> [W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a 'fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the [] board as to how to vote . . . rely.'

*In re Netsmart*, 924 A.2d 202 (Del. Ch. 2007).  These Supplemental Disclosures are material because Goldman Sachs used them as the foundation of its fairness opinion and analyses.  *See David P. Simonetti Rollover IRA v. Margolis*, 2008 Del. Ch. LEXIS 78 at *30 (Del. Ch. June 27, 2008) ("The key assumptions made by a banker in formulating his opinion are of paramount importance to the stockholders because any valuation analysis is heavily dependent upon the projections utilized.") (quoting *In re Netsmart*, 924 A.2d at 203).

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Under Rule 23(e)(2), a class settlement must be fair, reasonable, and adequate. In deciding whether to grant final approval of a settlement, the First Circuit provides for a "review of the overall reasonableness of the settlement that relies on neither a fixed checklist of factors nor any specific litmus test."[5]  Courts "generally consider the negotiating process by which the settlement was reached and the substantive fairness of the terms of the settlement compared to the result likely to be reached at trial." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003).[6]  Moreover, the Settlement should

---

[5] *In re Tyco Int'l Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007). *See also New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 280 (D. Mass. 2009) ("The First Circuit has not established a fixed test for evaluating the fairness of a settlement.").

[6] Courts in this Circuit have frequently used the *Grinnell* factors articulated by the Second Circuit to examine the fairness of settlements: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in

be evaluated within the context of the public policy favoring settlement. *See Puerto Rico Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014) (noting the "strong public policy in favor of settlements"); *Tyco*, 535 F.Supp.2d at 259 (same). "Where the settlement was the product of arms-length negotiation following extensive discovery, its fairness is presumed." *Gulbankian v. MW Mfrs., Inc.*, 2014 WL 7384075, at *2 (D. Mass. Dec. 29, 2014). Whether a settlement is fair, reasonable and adequate rests in the Court's sound discretion. *See City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043-44 (1st Cir. 1996). However, the Court should not "prejudge the merits of the case" and should not "second-guess the settlement." *Compact Disc*, 216 F.R.D. at 211 (*citing Evans v. Jeff D.*, 475 U.S. 717, 727 (1986)).

As discussed below, each of the *Grinnell* Factors supports final approval of the Settlement.

### A. THE COMPLEXITY, EXPENSE, AND LIKELY DURATION OF THE LITIGATION

Courts have repeatedly recognized that "[s]ecurities class actions are generally complex and expensive to prosecute." *In re Gilat Satellite Networks, Ltd.,* 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) ("[I]n evaluating the settlement of a securities class action, federal courts, including this Court, 'have long recognized that such litigation 'is notably difficult and notoriously uncertain.'"). If this action were to proceed rather than settle, the parties would have to continue an extensive and time-consuming discovery process involving the depositions of numerous former Covidien employees and Board members, and various third

---

light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *First DataBank,* 602 F.Supp.2d at 280-81 (*quoting City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

parties, expert discovery, class certification motion practice and the inevitable round of motions for summary judgment, all before reaching a trial on the merits in a case involving complicated valuation issues. *See Gulbankian*, 2014 WL 7384075, at *2 ("difficult issues of proof and substantial costs and time involved in preparation for an execution of a trial…militate in favor of settlement"); *In re StockerYale, Inc. Sec. Litig*., 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007) (factors including continuing discovery, class certification, and extensive pretrial motions "supports settlement"). Taking this into account, further litigation carries a great amount of risk and burden to both Parties, thus counseling in favor of final approval of the Settlement.

### B.  THE REACTION OF THE CLASS SUPPORTS THE SETTLEMENT

This factor "attempts to gauge whether members of the class support the settlement." *StockerYale*, 2007 WL 4589772, at *3. Reaction to a settlement is considered positive when the number of objectors is minimal compared with the number of claimants. *See In re Lupron Marketing and Sales Practices Litig*., 228 F.R.D. 75, 96 (D. Mass. 2005). A small percentage of objections and opt-outs constitutes strong evidence that a settlement is fair and reasonable. *See Bussie v. Allmerica Fin. Corp*., 50 F. Supp. 2d 59, 77 (D. Mass. 1999). Here, the objection deadline is September 11, 2015.  As of the date of this submission, there have been no substantive objections to the terms of the Settlement or request for attorneys' fees, including none from any institutional investor. *See In re Nortel Networks Corp. Sec. Litig*., 2006 WL 3802198, at *5 (S.D.N.Y. Dec. 26, 2006) (lack of objections by institutional investors supports settlement).  The one objection received thus far is administrative in nature and does not relate to the terms of the Settlement.  *See Note 3, supra*.  The Settlement has thus been very well-received by the Class.

### C.  THE STATE OF THE PROCEEDING AT WHICH SETTLEMENT WAS REACHED

The stage of the litigation when a settlement is reached "is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). The relevant inquiry "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

Here, the Parties had a clear view of the strengths and weaknesses of their respective positions. Prior to agreeing to the Settlement, Plaintiffs' Counsel thoroughly evaluated the strengths and weaknesses of Lead Plaintiff's claims, thoroughly investigated such claims and consulted with a financial expert. In addition, the Parties engaged in expedited discovery, including the production of documents relevant to the Transaction which included the presentations made to Covidien's Board by its financial advisor, Goldman Sachs. After consultation with their experts, Plaintiffs' Counsel informed Defendants' counsel of their intentions to move for a preliminary injunction to prevent completion of the Transaction based on alleged deficiencies in the Definitive Proxy Statement, further demanding that such information be disclosed to Covidien shareholders prior to the January 6, 2015 shareholder vote on the Transaction.

Subsequently, the Parties and their respective counsel engaged in arm's-length negotiations concerning these additional disclosures prior to the January 6, 2015 Covidien shareholder meeting and conditions of a potential resolution of the Consolidated Action.  As a result of these negotiations, on December 23, 2014, the Parties entered into an agreement-in-principle to resolve

11

the Consolidated Action and executed a Memorandum of Understanding ("MOU") setting forth the key terms of the Settlement.  Pursuant to the MOU, Defendants agreed to the Supplemental Disclosures and provide additional reasonable discovery to allow Plaintiffs to confirm the fairness, reasonableness an adequacy of the proposed Settlement.

Following the execution of the MOU, on December 23, 2014, Covidien made the Supplemental Disclosures by filing a Form 8-K with the SEC.  Stipulation, Ex. A. Covidien shareholders subsequently voted in favor of the Transaction at a general meeting of shareholders. The Transaction closed on January 26, 2015.

Thereafter, the Parties engaged in additional discovery, including the production of additional documents by Covidien, and depositions of former Covidien Board member Randall J. Hogan, III and Paresh Lala, a representative of Goldman Sachs.

As a result of this thorough investigation, motion practice, and settlement negotiations, Lead Plaintiff was able to settle the action at the precipice of discovery, before the Parties expended additional resources on legal and expert fees. Indeed, courts regularly approve settlements reached early in the formal litigation process.[7]  In sum, the Parties reached a settlement when well-informed as to the facts, legal issues, and risks of continued litigation.

### D. LEAD PLAINTIFF FACED GREAT RISKS IN ESTABLISHING LIABILITY AND DAMAGES

In considering this factor, courts "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate

---

[7] *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citations omitted) ("in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement"); *In re Bausch & Lomb Sec. Litig.*, 183 F.R.D. 78, 81 (W.D.N.Y. 1998) ("because much of the point of settling is to avoid litigation expenses such as full discovery, 'it would be inconsistent with the salutary purpose of settlement' to find that 'extensive pre-trial discovery is a prerequisite approval' of a settlement"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002) (a court "need not find that the parties have engaged in extensive discovery").

settlement." *StockerYale*, 2007 WL 4589772, at *3. Courts "routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear." *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *4 (S.D.N.Y. Jul. 31, 2008). Here, Lead Plaintiff would have faced numerous hurdles to establishing liability. While Lead Plaintiff believes that the Class's claims are valid, it also recognizes that "[t]he difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11.

If Lead Plaintiff were to establish liability, it would still have to prove that Class members suffered damages. Proving damages in securities fraud trials "is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury." *In re Independent Energy Holdings PLC*, 2003 WL 22244676, at *3 (S.D.N.Y. Sep. 29, 2003). Ultimately, the jury's determination of the amount of damages would "depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *18 (S.D.N.Y. Nov. 18, 2010). Thus, the Class still faced additional risk that it would not be able to obtain a large portion of the theoretical damages even if the jury rules fully in its favor on the liability issues. *See PaineWebber*, 171 F.R.D. at 129 ("The issue would undoubtedly devolve into a battle of experts whose outcome cannot be accurately ascertained in advance."). A consideration of this factor also weighs in favor of approving the Settlement, which provided concrete information benefits to the shareholders in advance of their momentous vote on the Transaction.

## E.  The Risks of Maintaining the Class Action through Trial

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *StockerYale*, 2007 WL 4589772, at *3. While Lead Plaintiff believes that class certification is proper, it is possible that the Court would reject a motion for certification for litigation purposes, with the result that no class action could be

sustained and each Class member would be required to pay for separate counsel and bring a separate lawsuit. Given that the Court may decertify a class at any time if the class proves to be unmanageable, this factor weighs in favor of granting final approval.

### F.   THE ABILITY OF THE DEFENDANTS TO WITHSTAND A GREATER JUDGMENT

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell,* 495 F.2d at 463. The fact that Covidien could theoretically have paid damages does not render the Settlement unreasonable. *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that [the defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Flag Telecom*, 2010 WL 4537550, at *19 ("[T]he mere ability to withstand a greater judgment does not suggest the settlement is unfair."). Where, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (despite defendants' ability to withstand higher judgment, settlement was fair in light of other *Grinnell* factors).

### G.   THE REASONABLENESS OF THE SETTLEMENT IN LIGHT OF THE BEST POSSIBLE OUTCOME AND THE ATTENDANT RISKS OF LITIGATION SUPPORT THE SETTLEMENT

There is "a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. . . ." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d at *119, 2005 U.S. App. LEXIS 74, 2005-1 Trade Cas. (CCH) P74,661 (2d Cir. N.Y. 2005). In determining what is reasonable, the Court "is not required to engage in a trial on the merits to determine the prospects of success." *In re Veeco Instruments*

*Inc. Sec. Litig.*, 2007 WL 4115809, at *11 (S.D.N.Y. Nov. 7, 2007) (citation omitted). The Court is also "not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Id.* If the case were to be tried, there is no guarantee that a jury would award the Class any amount of damages. *Independent Energy Holdings,* 2003 WL 22244676, at *4 ("Few cases tried before a jury result in a verdict awarding the full amount of damages claimed."). In fact, Defendants continue to deny that the Class suffered any damages at all. Instead, the Settlement provided key information that directly informed Covidien shareholders prior to their vote on the Transaction.

## V.    A SETTLEMENT CLASS SHOULD BE CERTIFIED

In presenting the proposed Settlement to the Court for preliminary approval, Lead Plaintiff requested that the Court preliminary certify the Class so that notice of the proposed Settlement, the Settlement Hearing and the rights of Settlement Class Members to object could be issued.  In allowing Plaintiffs' Motion for Preliminary Approval of the Settlement, this Court preliminarily certified the Class. Nothing has changed to alter the propriety of the Court's certification and, for all the reasons stated in Plaintiffs' Memorandum Of Law In Support Of Unopposed Motion For Preliminary Approval Of Settlement (Dkt. Entry No. 41), incorporated herein by reference, Lead Plaintiff now request that the Court grant final certification of the Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a)and (b)(3), appoint Lead Plaintiff as Settlement Class Representatives and appoint Co-Lead Counsel as Settlement Class Counsel for the Class.[8]

---

[8] Fed. R. Civ. P. 23(g)(1) states that, "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Co-Lead Counsel satisfies the requirements of Rule 23(g) and should be appointed as Class Counsel.  Co-Lead Counsel have fairly and adequately represented the Class, is knowledgeable about the applicable law, experienced in handling class actions, performed substantial work and committed significant resources in vigorously pursuing the Class' claims. See Fed. R. Civ. P. 23(g)(1)(B).

## VI.    THE FORM AND METHOD OF NOTICE WERE ADEQUATE

Defendants selected Garden City Group, LLC an experienced and diligent notice administrator, to administrate the notice and claims program. In connection with the proposed Settlement, the notice administrator disseminated more than 450,000 Notices during the period July 2, 2015 through August 14, 2015.[9] The Notice clearly and concisely described, in plain and easily understood language, the nature of the Action and the claims alleged in the Action, the definition of the Settlement Class, the terms of the proposed Settlement, including payment of Plaintiffs' attorneys' fees and litigation expenses, and the reasons for the Settlement.  In addition, the Notice explained that any Class member who so desired could enter an appearance through an attorney and the process by which Class members could object to the Settlement.

## VII.    LEAD PLAINTIFF'S APPLICATION FOR NEGOTIATED ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED

Lead Plaintiff, on behalf of Plaintiffs' Counsel, is applying for an award of $540,000 in attorneys' fees and expense incurred in the prosecution of this action on a fully contingent basis. Plaintiffs' Counsel's litigation efforts produced significantly enhanced disclosures in connection with the shareholder vote at the Covidien shareholder meeting, and the amount requested is reasonable and consistent with what courts have awarded in similar cases.  Accordingly, upon consideration of all relevant factors, Co-Lead Counsel's request is fair and reasonable and should be approved.

### A.    NEGOTIATED ATTORNEYS' FEES ARE FAVORED BY COURTS

Defendants do not oppose Plaintiffs' request that Covidien or its successor and/or assigns, and/or their insurer(s), and/or the insurer(s) of the Director Defendants pay up to $540,000 for Plaintiffs' attorneys' fees and expenses (inclusive of all costs, disbursements and expert and

---

[9] *See* Fraga Aff., which will be filed Friday, September 4, 2015.

16

consultant fees as awarded by Court), upon Court approval.  It was only after the Parties negotiated the other terms and provisions of the Settlement that the Parties addressed the issue of attorneys' fees. The amount that Covidien has agreed to pay is based on, among other things: (i) the results obtained and the substantial benefits achieved in advance of the closing of the Transaction; (ii) the character of the work performed including the difficulty, the time, and skill required, and the prosecution of Plaintiffs' claims on a fully contingent fee basis; and (iii) the quality of the services of Plaintiffs' counsel, as well as the work performed in pursuing and resolving the complex factual and financial issues, and legal and equitable claims alleged by Plaintiffs, including the investigation and analysis of the underlying facts and successful negotiations with defendants and their financial and legal advisors.

Where the parties in a representative action have negotiated and reached agreement on a fee, courts give great weight to the agreement reached by the parties. *See Gray*, 2004 WL 945137, at *4 ("It is appropriate for the parties in a class action to negotiate the specific amount of attorneys' fees to be awarded"); *see also, In re AXA Fin., Inc. S'holders Litig.*, No. 18268, 2002 WL 1283674, at *7 (Del. Ch. May 22, 2002) ("Where … the fee is negotiated after the parties have reached an agreement in principle on settlement terms and is paid in addition to the benefit to be realized by the class, this court will also give weight to the agreement reached by the parties in relation to fees."). In *Malchman v. Davis*, the Court of Appeals for the Second Circuit concluded that court should be hesitant to interfere in fee arrangements between plaintiffs and defendants in shareholders actions where defendants have agreed not to oppose the payments of fees up to a certain amount:

> [W]here . . . the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' and application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure

> and the plaintiffs do not want to be sandbagged.  It is difficult to see how this could
> be left entirely to the court for determination after the settlement.

761 F.2d 893, 905 n.5 (2d Cir. 1985); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)

(holding that an unopposed fee is ideal because "[a] request for attorney's fees should not result in

a second major litigation.  Ideally, of course, litigants will settle the amount of a fee"); *Wagenmann*

*v. Adams*, 829 F.2d 196, 226 (1st Cir. 1987) ("If at all possible, we are determined -- in this and

other kindred cases -- to sidestep the dismaying prospect of the counsel fee tail continuing

endlessly to wag the merits' dog.");  *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) (stating

that "settlement between the parties of the fee amount is encouraged"); *Johnson v. Ga. Highway*

*Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on

both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive

at a settlement as to attorney's fees").  Here, Defendants do not oppose Lead Plaintiffs' request for

attorneys' fees and expenses and, to date, no shareholder has objected to the fee requested.

Accordingly, the Parties' negotiations concerning attorneys' fees should be afforded significant

deference.

### B.   THE *JOHNSON* FACTORS CONFIRM THE REASONABLENESS OF THE FEE REQUEST

The First Circuit has "embraced," if not formally adopted, the factors set forth in *Johnson*

*v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), "for use in sculpting fee awards."[10]

Each of these relevant factors supports the requested award.

---

[10] *Coutin v. Young & Rubicam P.R.*, 124 F.3d 331, 337 n.3 (1st Cir. 1997) (citing *Johnson*, 488 F.2d at 717-19 and *Segal v. Gilbert Color Sys., Inc.*, 746 F.2d 78, 86 (1st Cir. 1984)).  The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases." *Coutin*, 124 F.3d at 337 n.3.

### 1.   The Time and Labor Required

The efforts undertaken by Plaintiffs' Counsel prior to reaching the Settlement with Defendants were substantial. Defendants have asserted aggressive defenses and expressed their belief that Plaintiffs could not prevail on the claims alleged. Despite Defendants' extensive efforts and the significant risks of continued litigation, Co-Lead Counsel was able to obtain an excellent recovery for the Class. In obtaining this result, Co-Lead Counsel marshaled considerable resources and committed substantial amounts of time and expense in a condensed time frame in the research, investigation and prosecution of this Action.  As a result of their extensive efforts, Co-Lead Counsel and Lead Plaintiff had an in-depth knowledge of the strengths and weaknesses of the claims that allowed them to engage in productive settlement negotiations with Defendants, as well as to fully consider and evaluate the fairness and adequacy of the Settlement. In a case asserting claims based on complex legal issues which were vigorously opposed by highly skilled defense counsel, Co-Lead Counsel succeeded in securing a highly favorable result for the Class under challenging circumstances.

### 2.   The Novelty and Difficulty of the Questions

Courts have long recognized that securities class actions are notoriously complex and difficult to prove.[11]  There is no question that this action presented a number of contested issues and formidable defenses to liability and damages.  Throughout the Consolidated Action, Defendants have adamantly denied liability and asserted various defenses, and would have contested any damage calculations presented by Lead Plaintiff. Any one of the foregoing issues, if they were decided in Defendants' favor, could have been the *coup de grace* to Lead Plaintiff's

---

[11] *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, 2011 U.S. Dist. LEXIS 17747, at *10 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 63342, at *15 (E.D.N.Y. June 24, 2010) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the [PSLRA]").

case, or at the very least, severely curtailed any prospects for a recovery. Substantial risks and uncertainties in this type of litigation made it far from certain that any recovery would ultimately be obtained.  As such, Co-Lead Counsel determined to enter into the Settlement that provided important therapeutic benefits to Covidien shareholders in the form of the Supplemental Disclosures, prior to the shareholder vote on the Transaction. This factor strongly supports the requested award.

### 3.   The Skill Required to Perform the Legal Services

Co-Lead Counsel are nationally known in the fields of securities class actions and complex litigation.  *See* Leviton Decl. Exs. 2-3 (fee affidavits with firm résumés of each of Co-Lead Counsel).  Moreover, the record shows that this Litigation is highly complex, involving thorny, and often unresolved, legal issues and difficult assembly of proof. Among the many issues on which the Parties do not agree are: (i) whether Defendants violated the securities laws; (ii) whether Defendants breached their fiduciary duties owed to shareholders of Covidien and/or aided and abetted these breaches; (iii) the method for determining whether the consideration paid to Covidien shareholders was adequate; (v) whether the disclosures originally provided by the Defendants sufficiently disclosed all material information necessary for Covidien shareholders to cast an informed vote on the Transaction; and (v) the amount of damages (if any) that could be recovered at trial. The quality of opposing counsel is also important in evaluating the quality of the work done by Co-Lead Counsel.[12]  Co-Lead Counsel was opposed by skilled counsel from Ropes & Gray LLP and Wachtell, Lipton, Rosen & Katz, global law firms with well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. In the face of this

---

[12] *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) (taking into account the skill and reputation of opposing counsel in ruling that a one third fee was appropriate).

opposition, Co-Lead Counsel was able to develop their case and secure the important Supplemental Disclosures for the Class. This supports Lead Plaintiff's fee request.[13]

### 4.   The Customary Fee and the Size of Awards in Similar Cases

The requested fee in comparison to the Settlement also supports the approval of Co-Lead Counsel's fee request.  Here, Co-Lead Counsel is requesting a fee of $540,000.  Courts around the country, including here in the Commonwealth and also in Delaware where similar actions are often litigated, frequently award fees similar to, or in excess of, the fee requested here, including the following.

- *In re Labarge, Inc. S'holder Litig.*, Consol. C.A. No. 6368-VCN, at 34 (Del. Ch. Jan. 3, 2012) (awarding $600,000 in fees, in part, for enhanced disclosure on projections, financial analyses, compensation paid to the financial advisor and consideration of strategic alternatives) (Leviton Decl., Ex. 7);

- *In re Epoch Holding Corp. S'holder Litig.*, C.A. No. 8144-VCP (Del. Ch. Nov. 1, 2013) (awarding $550,000 for additional disclosure on, among other things, the financial advisor's previous relationships, post-merger retention arrangements and projections) (Leviton Decl., Ex. 8);

- *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, C.A. No. 5402-CS (Del. Ch. Jan. 25 2011) (Order) (awarding $750,000 in fees for the disclosure of how financial advisor arrived at discount rate, free cash flows and discussions regarding post-merger management compensation) (Leviton Decl., Ex. 9);

- *In re Celera Corp. S'holder Litig.*, Consol. C.A. No. 6304, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012) (awarding $650,000 for the disclosure of drug-by-drug free cash flows, how stock-based compensation was treated, the tax savings of NOLs, and the ranges of multiples observed for comparable companies and precedent transactions) (Leviton Decl., Ex. 10);

- *In re Supertex, Inc. S'holder Litig.*, Case No. 1-14-CV-261747 (Cal. Super. Sept. 14, 2014) (Order) (awarding fees of $550,000 for disclosure of potential board and financial advisor conflicts, financial forecasts, and the background of the merger) (Leviton Decl., Ex. 11);

---

[13] *See In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 U.S. Dist. LEXIS 14772, at *54 (E.D. Mo. June 30, 2005) ("it is reasonable for Co-Lead Counsel and the other plaintiffs' firms be as well paid as their adversaries who did not work on a contingency basis").

- *Fundamental Partners, et. al., v. Charles Baker, et. al.*, Case No. RG14733959 (Cal. Super. Feb. 27, 2015) (Order) (awarding $595,000 in fees for disclosures and voluntary waiver of don't-ask-don't-waive provision in one confidentiality agreement) (Leviton Decl., Ex. 12).

- *Atoll Advisors v. Gregory A. Serrao, et al.*, Case No. 11-4425, (Mass. Sup. Ct. July 19, 2012) (Order and Final Approval and Judgment) (Leviton Decl., Ex. 13) (awarding $600,000 in attorneys' fees for supplemental disclosures).

Thus, this factor supports approve of Plaintiff's fee requested.

### 5.   The Contingent Nature of the Fee and Risk of Nonpayment

"Many cases recognize that the risk assumed by an attorney is 'perhaps the foremost factor' in determining an appropriate fee award." *In re Lupron Marketing and Sales Practices Litigation*, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) (quotation omitted). Co-Lead Counsel undertook this action on an entirely contingent basis and prosecuted the claims with no guarantee of compensation or recovery of any litigation expenses. Co-Lead Counsel has received no compensation for its services since this action was initiated. Co-Lead Counsel understood that it was embarking on a complex, expensive and lengthy litigation process. In undertaking this heavy responsibility, Co-Lead Counsel was obligated to ensure that sufficient resources were dedicated to this prosecution, and that funds were available to pay for the considerable expense.

### 6.   The Amount Involved and the Results Obtained

Disclosures are considered a valuable benefit because, where shareholders are being asked to vote in connection with a transformative corporate transaction, "stockholders are entitled to disclosure of all material facts pertinent to the decisions they are being asked to make." *In re Pure. Res.*, 808 A.2d at 447-48 ("as a result, it is the information that is material to these various choices that must be disclosed.").

As discussed *supra*, as a result of this litigation and the efforts of Co-Lead Counsel, Lead Plaintiff secured the Supplemental Disclosures, vindicating shareholders' right to cast a fully informed vote on the Transaction.

### 7.   A Lodestar Cross-Check Supports the Requested Fee

The First Circuit does not require a lodestar cross-check to determine the reasonableness of the requested fee. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 at *81, 2005 U.S. Dist. LEXIS 21630, 2005-2 Trade Cas. (CCH) P74,962 (D. Mass. 2005). Nevertheless, when a lodestar cross-check is employed, the focus is not on the "'necessity and reasonableness of every hour'" of the lodestar, but rather on the broader question of whether the requested fee appropriately reflects the degree of time and effort expended by counsel. *Tyco*, 535 F. Supp. 2d at 270 (quoting *Thirteen Appeals*, 56 F.3d at 307).

The lodestar method requires that the Court ascertain the lodestar "figure" by multiplying the number of hours worked by the normal hourly rates of counsel.  *See Hensley*, 461 U.S. at 434; *City of Detroit v. Grinnell Corp.*, 550 F.2d 1093, 1098 (2d. Cir. 1977) ("*Grinnell II*"), *abrogated by Goldberger*, 209 F.3d at 43; *Warner Commc'ns*, 618 F. Supp. at 747.  Cumulatively, Plaintiffs' Ccounsel have devoted approximately 900 hours to this litigation, including attorney and paraprofessional time, representing a total lodestar of $472,555.26 and incurred $30,007.79 in unreimbursed expenses.  *See*  Leviton Decl. Exs. 1-5.  This represents a modest multiplier of 1.07. Courts across the country have found multipliers much higher than this in similar, contingent litigation to be reasonable.  *See, e.g., Golebiowski v. Mega Life & Health Ins. Co.*, No. 3:04-cv-00831-G, 2005 U.S. Dist. LEXIS 614, at *8 (N.D. Tex. Jan. 14, 2005) (fee multiplier of 4 was reasonable); *DiGiacomo v. Plains All Am. Pipeline*, No. H-99-4137, 2001 U.S. Dist. LEXIS 25532, at *35 (S.D. Tex. Dec. 19, 2001) (fee equal to 5.3 times lodestar); *NSL Mgmt. v. Gorman*, Docket No. C-48-08 (Sup. Ct. N.J. Jan. 20, 2009) (Order) (Awarding multiple of 1.81); *In re Entrust*

*S'holder Litig.,* DC-09-04802-B*, 44th[th] Judicial District, Dallas County (approving multiplier of 1.43); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("'In recent years multipliers of between 3 and 4.5 have been common' in federal securities cases") (citation omitted); *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 255 (2001) (multiplier can range "from 2 to 4 or even higher.").

Accordingly, when considering the contribution and value of the Settlement, Lead Plaintiff's Fee and Expense request is well within reason.

## VIII.    CONCLUSION

In the judgment of Lead Plaintiffs' counsel, the Settlement is a fair compromise of the issues in dispute.   Accordingly, Lead Plaintiff respectfully requests the Court to approve the proposed Settlement and enter the [Proposed] Final Judgment Order, attached as Exhibit D to the Stipulation.

Respectfully submitted,

Dated:  August 31, 2015

**BLOCK AND LEVITON, LLP**

By:    */s/ Jason M. Leviton*

Jason M. Leviton
155 Federal Street, Suite 400
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020
Jason@blockesq.com

*Liaison Counsel for the Class*

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, NY 10036
Tel.: (212) 682-3025
Fax: (212) 682-3010
racocelli@weisslawllp.com
mrogovin@weisslawllp.com
kkeenan@weisslawllp.com

**LEVI & KORSINSKY LLP**
Shannon L. Hopkins
30 Broad Street, 24th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
shopkins@zlk.com

*Co-Lead Counsel for the Class*

### **CERTIFICATE OF SERVICE**

I hereby certify that this filed through the CM/ECF system will be sent electronically to

the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: August 31, 2015


*/s/ Jason M. Leviton*
Jason M. Leviton