# EXHIBIT 6

The Clerk of Court
John Joseph Moakley US Courthouse
1 Courthouse Way,
Boston
Massachusetts, 02210

53 Marsworth Avenue
Pinner
Middlesex  HA5 4TS
United Kingdom

E-mail : grahamnewhouse@tiscali.co.uk

Telno :  0208 428 4655

21st  August  2015

Dear Sir,

COVIDIEN PLC SECURITIES CLASS ACTION SETTLEMENT

Issue

1)  The terms of the proposed Settlement would forever bar me from taking any action or proceeding to secure the balance of the cash payment due to me under the Transaction Agreement between Covidien and Medtronic.  This position has arisen since as a UK investor the Scheme of Arrangement was inoperable and Wells Fargo Shareholder Services applied backup withholding taxes in error.

2)  To request the Court's support to enable me to secure full payment of the sums due to me would be appreciated.

Background

I was a UK shareholder in Covidien plc common stock between June 14, 2014 and January 26, 2015 ( Annex A refers ).

Under the Transaction Agreement I should have received $35.19 in cash and 0.956 of an ordinary share of new Medtronic.  I have received my share allocation but less than 13.5% of the cash payment due to me.

I shall not be attending the Court hearing.

The Specific Grounds for Objections

It was impossible for me to complete the Letter of Transmittal and Form for Certification of Treatment of Cash Portion of Scheme Consideration as these forms arrived AFTER the deadline date of February 6th, 2015  ( Annex B refers ).

Wells Fargo Shareholder Services ( WFSS ) have treated me as " an undocumented US

citizen " even though WFSS in Box E of the Letter of Transmittal correctly included my name and address as the UK registered holder ( Annex A refers).

In addition I had forwarded to BYN Mellon Shareholder Services on April 13th, 2012 Form W-BEN certifying in respect of my Covidien plc shares that I am resident in the UK within the meaning of the income tax treaty between the United States and the United Kingdom. This form will remain valid until December 31st, 2015 ( Annex C refers ).WFSS and the lawyers setting up the Scheme of Arrangement had many months to satisfy themselves they had satisfactory information on UK investors and to ensure arrangements were in place regarding withholding tax requirements. If WFSS had checked this information no sums would have been deducted in my case.

Although requesting on two occasions the name and address of the US IRS office where the sums owing to me have been sent WFSS have not provided these details.

I enclose a copy of my letter of April 28th to Mr Todd J. May Head of WFSS ( Annex D ) and the reply of May 12th, 2015 from the Research and Response unit ( Annex E ) which ignored the issues raised in my letter.

WFSS also earlier ignored my request for details of their complaints procedure.

Further Background

I enclose my e-mail of April 23rd, 2015 which provides further background including my discussions with the Internal Revenue Service at the US Embassy in London. ( Annex F ).

I wrote to the Internal Revenue Service, International Accounts at Philadelphia PA 19255 - 0725 on 26th May 2015 requesting a refund of the withheld taxes amounting to $12,180.47. I have not received any reply not even an acknowledgement.

The Counsel for Plaintiffs in their Notice about the proposed Settlement requested that if there were any questions about the Notice these should be raised with them. In my letter of 10th July 2015 I asked whether the Counsel for Plaintiffs were aware :

( 1 ) How UK shareholders have been affected by the terms of the Scheme of Arrangement and ;

( 2 ) Did any discussions take place with the Counsel for Defendants about the amount of the proposed settlement which recognised that this would debar UK shareholders from seeking compensation against Medtronic / Covidien plc and Wells Fargo Shareholder Services for the circumstances outlined above ?

( 3 ) Have any other foreign non-UK investors received similar treatment ?

I have not received any response nor to my follow up e-mail of August 11th, 2015.

Conclusion

Before approving the proposed Settlement the Court may wish

( 1 ) to determine the extent to which the terms of the Scheme of Arrangement put UK investors in an inequitable position compared to US investors.

( 2 ) to allow UK investors the opportunity to take action and proceeding against either Medtronic, Covidien plc or Wells Fargo Shareowner Services.

( 3 ) to provide support to enable me to secure full payment of sums due to me given the failure of the various parties to address the issues that I have raised since February 2015.

I am sending copies of this letter to the Co-Lead Counsel for Plaintiffs and to Counsel for Defendants listed in the Notice about the proposed Settlement.

Yours faithfully,

G A Newhouse

Graham Newhouse

# LETTER OF TRANSMITTAL

Exchange of Ordinary Shares of **Covidien plc – CUSIP # G2554F113**
for Cash and Ordinary Shares of Medtronic plc
pursuant to the Transaction Agreement, dated as of June 15, 2014 (the "Transaction Agreement")

Pursuant to the Transaction Agreement, Medtronic plc ("Parent") and Makani II Limited ("IrSub") acquired Covidien plc ("Covidien") pursuant to a scheme of arrangement under the Irish Companies Act of 1963 (the "Scheme"). At the effective time of the Scheme (the "Effective Time"), each Covidien ordinary share, $0.20 each in the capital of Covidien, other than the Designated Shares and the Treasury Shares (as such terms are defined in the Scheme) (each, a "Covidien Share"), was converted into the right to receive (x) 0.956 of a Parent ordinary share, par value $0.0001 per share, and (y) $35.19 in cash and cash in lieu of fractional shares (the "Scheme Consideration").

**All shareholders must complete Box A and the attached FORM FOR CERTIFICATION OF TREATMENT OF CASH PORTION OF SCHEME CONSIDERATION.**

| FOR OFFICE USE ONLY  Approved _____  W-9 Completed _____ | |
|---|---|
| **BOX A – Signature of Registered Shareholders** | **BOX B – Certificate(s) Enclosed** |
| (Must be signed by all registered shareholders; include legal capacity if signing on behalf of an entity) <br><br> Signature <br> G A Newhouse <br> Signature <br> 0208  428  4655 <br> Telephone Number | **NOT APPLICABLE** |
| **BOX C – New Registration Instructions** | **BOX D – One Time Delivery Instructions** |
| To be completed *ONLY* if the shares are to be issued in the name(s) of someone other than the registered holder(s) in Box E. ISSUE TO: | To be completed *ONLY* if the confirmation of the registration of the book-entry shares is to be delivered to an address other than that listed in Box E. MAIL TO: |
| Name | Name |
| Street Address | Street Address |
| City, State and Zip Code | City, State and Zip Code |

Please remember to complete and sign, if applicable, the enclosed IRS Form W-9 or W-8BEN, as applicable.

| **BOX E – Name and Address of Registered Holder(s)** | **BOX F – Medallion Guarantee** |
|---|---|
| Please make any address corrections below | If you have completed Box C, your signature must be *Medallion Guaranteed* by an eligible financial institution. |
| ☐ indicates permanent address change <br><br> 635 <br> GRAHAM ANDERSON NEWHOUSE <br> 53 MARSWORTH AVE <br> PINNER <br> MIDDX  HA5 4TS <br> UNITED KINGDOM | **Note: A notarization by a notary public is not acceptable** <br><br> Account # 4300023496  Issue # MDTA <br> TOTAL SHARES 400.000 |

NOTICE TO NON-RESIDENT ALIEN INDIVIDUALS OR FOREIGN ENTITIES (e.g. foreign corporation, partnership or trust): *DO NOT COMPLETE THE ENCLOSED IRS FORM W-9.* NON-RESIDENT ALIEN INDIVIDUALS MAY COMPLETE THE ENCLOSED FORM W-8BEN, OR OBTAIN A FORM W-8BEN-E AT www.irs.gov OR BY CALLING 877-536-3552. FOREIGN ENTITIES NEED TO COMPLETE THE APPLICABLE TYPE OF FORM W-8 (REVISED AS OF 2014) AND RETURN THAT CERTIFICATION OF FOREIGN TAX STATUS. FAILURE TO DO SO COULD SUBJECT YOU TO U.S. FEDERAL WITHHOLDING OF EITHER 28% OR 30% OF THE REPORTABLE/WITHHOLDABLE AMOUNT.

## IMPORTANT NOTE:

In accordance with Irish law, if you do not sign and return this Letter of Transmittal, each of your Covidien Shares will be converted automatically into the Scheme Consideration on February 9, 2015, the 14th day following the date on which the Effective Time occurred. However, failure to sign and return this Letter of Transmittal may result in backup withholding taxes being applied to the Scheme Consideration paid to you (the "Owner"). We urge you to sign and return this Letter of Transmittal promptly upon receipt (and, in any event, no later than February 6, 2015) in order to enable Wells Fargo Shareowner Services (the "Exchange Agent") to timely process any applicable withholding tax exemptions that you may qualify for prior to the deadline for disbursement of the Scheme Consideration under Irish law.

# FORM FOR CERTIFICATION OF TREATMENT OF CASH PORTION OF SCHEME CONSIDERATION

IMPORTANT NOTICE: COVIDIEN SHAREHOLDERS ALSO OWNING SHARES OF MEDTRONIC, INC.COMMON STOCK WILL RECEIVE A SEPARATE CERTIFICATION IN RESPECT OF T
RELATED MERGER OF AVIATION MERGER SUB, LLC WITH AND INTO MEDTRONIC, INC. (THE "MERGER"). IN ADDITION TO COMPLETING THIS FORM, SUCH SHAREHOLDERS MU
ALSO COMPLETE AND RETURN THE MERGER CONSIDERATION CERTIFICATION BY THE APPLICABLE DEADLINE SET FORTH ON SUCH CERTIFICATION.

**Effective Date of Scheme: January 26, 2015**

**Description of Covidien Shares: Ordinary shares, par value $0.20 per share, issued by Covidien**

**Description of Parent Shares: Ordinary shares, par value $0.0001 per share, issued by Parent**

DEADLINE TO SUBMIT THIS CERTIFICATION FORM:  DECEMBER 31, 2015.  Although the deadline for submitting this Certification is December 31, 2015, failu
to sign and return to the Exchange Agent the Letter of Transmittal to which this Certification is attached no later than February 6, 2015  may result in backup
withholding taxes being applied to the Scheme Consideration paid to you.  If you are unable to return this Certification by February 6, 2015, we urge you to sig
and return the Letter of Transmittal prior to that date and separately return this Certification prior to December 31, 2015.

IF THIS FORM IS NOT RECEIVED BY THE EXCHANGE AGENT BY THE DEADLINE ABOVE FOR INFORMATION REPORTING PURPOSES, THE SHAREHOLDER I
BE TREATED AS HAVING RECEIVED GROSS PROCEEDS FOR THE CASH PORTION OF THE SCHEME CONSIDERATION, REGARDLESS OF WHETHER S
SHAREHOLDER COULD HAVE MADE THE CERTIFICATION IN PART B BELOW.

*See enclosed instructions and consult your tax advisor if you have any questions about completing this Certification.*

## Description of Transaction

The transaction to which this Certification relates is an acquisition of Covidien by Parent and IrSub pursuant to the Scheme, resulting in Covidien becoming a wholly owr
subsidiary of Parent.  Pursuant to the Scheme, each Covidien Share has been cancelled in exchange for the Scheme Consideration.

## Nature of Scheme Consideration - Check Applicable Box and Provide Any Required Information.  PLEASE CHECK ONLY PART A OR PART B.

**Part A ☑ Meaningful Reduction in Proportionate Interest (Gross Proceeds)**

Owner's cash portion of the Scheme Consideration should be treated for U.S. federal income tax purposes as a payment in exchange for the cancellatior
Owner's Covidien Shares, rather than as a dividend, because Owner's proportionate interest in Covidien was meaningfully reduced as a result of the payme
as reflected in the following calculations:

Prior Interest: Immediately prior to the effectiveness of the Scheme, Owner owned _____ (Y) Covidien Shares (taking i
account Covidien Shares owned directly by Owner and Covidien Shares that Owner is deemed to own for this purpose un
sections 304(c)(3) and 318 of the Internal Revenue Code (including option ownership)), which represented _____ (100*Y/
percent of the outstanding Covidien Shares immediately prior to the effectiveness of the Scheme.

Subsequent Interest: Immediately following the consummation of the transactions contemplated by the Transaction Agreement (the "Transaction
Owner owned _____ (Z) Parent Shares (taking into account Parent Shares received in exchange for
cancellation of Owner's Covidien Shares, Parent Shares that Owner is deemed to own for this purpose under sections 304(c)
and 318 of the Internal Revenue Code (including option ownership), Parent Shares that Owner acquired in exchange for Medtror
Inc. common shares, and accounting for Parent Shares that Owner otherwise purchased (or sold) in connection with
consummation of the Transactions), which represented _____ (100*Z/X) percent of the outstanding Parent Sha
immediately following the consummation of the Transaction.

For use in the calculations above:
**Outstanding Covidien Shares Immediately Prior to the Effectiveness of the Scheme: 454,507,245 (W)**
**Outstanding Parent Shares Immediately Following the Consummation of the Transactions: 1,423,061,872 (X)**

☑ Or, in lieu of the calculations above Owner hereby certifies that Owner was not a shareholder of Medtronic, Inc. immediately prior to the Merger, has
acquired additional shares of Parent in connection with the consummation of the Transactions, and is not deemed to own additional Parent Shares thro
attribution from another shareholder (or as a result of owning options in Parent), and thus Owner's proportionate interest in Parent did not increase as a resu
the Transactions.

**Part B ☐ Dividend**

Owner's cash portion of the Scheme Consideration should be treated for U.S. federal income tax purposes as a dividend.

## CERTIFICATION

Under penalties of perjury, I declare that I have examined the information on this Certification and, to the best of my knowledge and belief, it is true, correct, and complete
further certify under penalties of perjury that I am the Owner (or authorized to sign for the Owner) of the portion of the Scheme Consideration to which this Certificat
relates and was the Owner (or am authorized to sign for the Owner) of the Covidien Shares with respect to which payment of such portion of the Scheme Consideration w
made.

Sign Here > _____G A Newhouse_____     ___02-09-20:5___     ___OWNER___
Signature of Owner or person authorized to sign for  Owner          Date (MM-DD-YYYY)      Capacity in which acting

Wells Fargo Shareowner Services
Corporate Actions Dept - MDTA
P.O. Box 64858
St. Paul, MN 55164-0858
U S A

53 Marsworth Ave
Pinner
Middlesex, HA5 4TS
United Kingdon

Telno : 0208 428 4655

E-mail : graham.newhouse@tiscali.co.uk

9th February, 2015

Dear Sirs,

### MEDTRONIC

Please find enclosed the completed Letter of Transmittal together with my completed Form W - 8BEN.

I need to mention that the forms and correspondence sent to me under cover of Mr Omar Ishrak's letter of January 26, 2015 were posted on January 30th, 2015 and did not reach me until Saturday February 7th, 2015 i.e. AFTER the deadline date requested for submission of the Certification Form.

In case of need, as you will see, I have provided my contact details above.

Yours faithfully,

G A Newhouse

Graham Newhouse

205102 G2554F11 NEWHOUSE-GRAHA0000

ANNEX C

COVIDIEN PLC
COMMON
BNY MELLON SHAREOWNER SVCS

6 U.S. Taxpayer Identification Number,
if required (see instructions)
SSN or TIN

1 Name of individual or organization that is the beneficial owner

GRAHAM ANDERSON NEWHOUSE

2 Country of incorporation or organization. Do not abbreviate country.

N/A

3 Type of beneficial owner:

[✓] Individual   [ ] Corporation   [ ] Estate   [ ] Private Foundation

4 Permanent residence address (street, apt. or suite no., or rural route). Do not use a P.O. box or in-care-of address. Do not abbreviate country.

53 MARSWORTH AVE. PINNER MIDDX HA5 4TS UNITED KINGDOM

5 Mailing address (if different from above)

GRAHAM ANDERSON NEWHOUSE
53 MARSWORTH AVE
PINNER
MIDDX HA5 4TS UK

**SEE ENCLOSURE FOR IMPORTANT INSTRUCTIONS AND PROVIDE INFORMATION ON BOTH SIDES OF W8BEN**

3

Claim of Tax Treaty Benefits (if applicable)

9   I certify that (check all that apply):

a  [✓]  The beneficial owner is a resident of ___UNITED KINGDOM___ within the meaning of the income tax
        treaty between the United States and that country. Do not abbreviate country.

b  [ ]  If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).

c  [ ]  The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed,
        and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits (see instructions).

d  [ ]  The beneficial owner is not an individual, is claiming treaty benefits for dividends, received from a foreign corporation
        or interest from a U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).

Certification: Under penalties of perjury, I declare that I have examined the information on this form and
to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties
of perjury that:

1   I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form
    relates,

2   The beneficial owner is not a U.S. person,

3   The income to which this form relates is (a) not effectively connected with the conduct of a trade or business
    in the United States, (b) effectively connected but is not subject to tax under an income tax treaty, or (c) the
    partner's share of a partnership's effectively connected income, and

4   For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the
    instructions. Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt,
    or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make
    payments of the income of which I am the beneficial owner.

Sign Here ▶   G A Newhouse                          04-13-2012        BENEFICIAL OWNER
              Signature of beneficial owner (or individual authorized to sign for beneficial owner)   Date (MM-DD-YYYY)   Capacity in which acting

PLEASE PROVIDE INFORMATION ON BOTH SIDES OF W8BEN.

Mr Todd J. May
Head, Wells Fargo Shareowner Services
1110 Centre Point Curve
Suite 101
Mendota Heights
Minnesota  55120 - 4100
United States

53 Marsworth Ave
Pinner
Middlesex  HA5 4TS
United Kingdom

E-Mail : grahamnewhouse@tiscali.co.uk

My Account Number : 4300023496

28th April 2015

Dear Sir,

### Re : Medtronic Cash payment for Covidien plc

**Issue**

1)      It is only right that I should give you the opportunity to review my case and
arrange for  Wells Fargo / Medtronic to make payment to me for the balance of
$ 12,180.47 which has arisen because of a series of administrative transgressions.

**Background**

2)   In accordance with the Scheme of Arrangement whereby Medtronic acquired
Covidien plc I should have received 382 Medtronic shares and $14,076 in cash for my 400
Covidien shares.  The Direct Registration Account statement for the shares has been
forwarded but I have only received a $1,895.53 cash payment.

3)  It was impossible for me to complete the Letter of Transmittal and the submission of
the Certification Form as they arrived after the deadline date of February 6th ,2015
( Annex A refers ).

4)  I have been treated as " an undocumented US citizen ( Annex B ) even though Wells
Fargo in Box E of the Letter of Transmittal correctly included my name and address as the
registered holder ( Annex C refers ).  In addition I had forwarded to BNY Mellon
Shareholder Services on April 13th, 2012 Form W-8BEN certifying in respect of my
Covidien plc shares that I am the beneficial owner and am resident in the United Kingdom
within the meaning of the income tax treaty between the United States and the United
Kingdom.  This form will remain valid until  December 31, 2015.  I have completed 2
furtherW-8BEN forms for Wells Fargo.  If Wells Fargo had checked this information no
sums would have been deducted.

5)  You will note that I have been directed to seek a refund from the US IRS and to use form 1040NR which does not exist ( Annex D refers ).

6)  Although requesting the name and address of the US IRS office, where the sums owing to me have been despatched, these details have not been provided.  I would like this information and any reference numbers and payment date.

7)  The lawyers setting up this Scheme and Wells Fargo had many months to satisfy themselves they had satisfactory information on U K investors.

I trust that Wells Fargo will now rectify the position and make payment to me of the balance owing of $12,180.47 .

Yours faithfully,

G A Newhouse

Graham  Anderson  Newhouse

ANNEX E


WELLS
FARGO

Wells Fargo Shareowner Services
PO Box 64854
Saint Paul, MN 55164-0854
www.shareowneronline.com

May 12, 2015

GRAHAM ANDERSON NEWHOUSE
53 MARSWORTH AVE
PINNER
MIDDX HA5 4TS
UNITED KINGDOM

Subject:   Medtronic plc/Medtronic, Inc. acquisition of Covidien plc

Dear Mr. Newhouse:

Wells Fargo Shareowner Services (WFSS) has received a copy of your letter to Todd May, Head of Wells Fargo Shareowner Services. WFSS will reply on his behalf regarding your recent communication with us. We apologize that your experience has been unsatisfactory and would like to address your concerns.

On Monday, January 26, 2015, Medtronic, Inc. acquired Covidien plc through the formation of a new holding company incorporated in Ireland, Medtronic plc.

All holders of record of Covidien plc ordinary shares were mailed a letter of transmittal in order to surrender the Covidien plc shares for exchange. In accordance with Irish law, if you did not sign and return the letter of transmittal within 14 days of the closing of the transaction, your Covidien shares were converted automatically into shares of Medtronic plc.

The letter of transmittal also included a Form for Certification of Treatment of Cash Portion of Scheme Consideration. Registered shareholders may complete that form and submit it by December 31, 2015, to certify whether the cash portion of the exchange should be treated as receiving a dividend or a payment of gross proceeds from the sale of the Covidien plc shares for U.S. federal income tax purposes. If the form was not returned at the time your Covidien shares were converted into Medtronic plc, backup withholding taxes may have applied to the exchange.

Additional information is available online at http://www.covidien.com/investor under "Information on the Proposed Combination with Medtronic".

Together we'll go far

Uncertified accounts and foreign accounts without a valid W-8BEN form on file with Wells Fargo Shareowner Services were subject to the U.S tax withholding rate of 28 percent for the Covidien plc exchange and for the fair market value of the new Medtronic plc shares. Please refer to the enclosed Covidien plc exchange tax withholding documentation.

To see if funds withheld from the exchange can be refunded, we suggest contacting a tax advisor or the IRS directly. The Internal Revenue Service may be contacted online at www.irs.gov or www.irs.gov/Individuals/International-Taxpayers to research how you as a foreign shareholder may be able to request a refund of the US taxes paid.

Taxpayers located outside the United States may contact the IRS at:

Internal Revenue Service
International Accounts
Philadelphia, PA 19255-0725
Tel: 267-941-1000
Fax: 267-941-1055

If you have additional questions or concerns, please contact us at 888-648-8154 or for local and outside U.S at 651-450-4064.

Sincerely,

Research and Response
Shareowner Services

Enclosure:  Covidien plc exchange tax withholding documentation

## Covidien plc exchange tax withholding

1. 400 shares x $35.19 cash per share = **$14,076.00 gross proceeds**
2. Gross proceeds $14,076.00  x 0.28 (28%)  = **$3,941.28 withholding**
3. $14,076.00 (gross proceeds)  -  $3,941.28 (the tax) = **$10,134.72 net proceeds**
4. 382.40 shares x $76.95 (Fair market value per share) = **$29,425.68 fair market value**
5. $29,425.68 x 0.28 (28 %) = **$8,239.19 withholding**
6. $10,134.72 (net proceeds) - $8,239.19 (withholding) = **$1,895.53 check amount**

**From:** Graham Newhouse [mailto:grahamnewhouse@tiscali.co.uk]
**Sent:** Thursday, April 23, 2015 4:27 AM
**To:** Ingalsbe, Rhonda
**Subject:** Re: RE : Medtronic Cash payment for Covidien plc

Dear Rhonda,

Thank you for your prompt reply.  However, it does not answer the questions I have raised in my e-mail of April 21, 2015.
1)  Why have Medtronic / Wells Fargo withheld over 86.5% of the Medtronic cash payment owed to me for my Covidien shares ?
2)  Could you please direct me to the Article in the tax regulations that permits more than 30% to be deducted ?

The IRS at the US Embassy have advised that the 30% withholding tax level cannot be exceeded.  This is also confirmed on page 145 of Proxy -S4 of November 20, 2014 under Section 304 dividend taxation to a non-US holder.

I also wish to draw your attention to page 147 of Proxy -S4 of November 20, 2014 which states ... " a non-US holder that exchanges Covidien ordinary shares for new Medtronic ordinary shares and cash in lieu of fractional shares pursuant to the scheme generally will not be subject to the US federal income or withholding tax on its gain."   This statement again confirms the advice I received from the IRS at the US Embassy in London.

The issue is that as it was impossible for me to comply with the Scheme of Arrangement  and monies have been withheld incorrectly Medtronic / Wells Fargo should now rectify the position.

To expect a U K investor to have to try and recoup funds from the IRS for the Scheme's mal-administration is frankly bizarre.  Payment should be made directly to me now and Medtronic / Wells Fargo should seek a refund from the IRS.

With respect, are discussions taking place with Wells Fargo ( I note your Medtronic e-mail address ) since I can assure you I shall not rest until Medtronic / Wells Fargo meet their obligations in full.

Will you please answer the questions above.

Yours sincerely,

Graham Newhouse

# EXHIBIT 7

**EFiled: Jan 3 2012 3:17PM EST**
**Transaction ID 41658864**
**Case No. 6368-VCN**

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

|  |  |  |
|---|---|---|
| IN RE LABARGE INC. SHAREHOLDER LITIGATION | :<br>:<br>:<br>: | C.A.  No. 6368-VCN |

## [PROPOSED] FINAL ORDER AND JUDGMENT

WHEREAS, a hearing having been held before this Court on January 3, 2012, pursuant to this Court's Order for Notice and Scheduling of a Settlement Hearing dated November 22, 2011, (the "Scheduling Order"), upon a Stipulation of Settlement and Dismissal dated November 14, 2011 (the "Stipulation") filed in the above-captioned action (the "Delaware Action"), which (along with the defined terms therein) is incorporated herein by reference; it appearing that due notice of such hearing has been given in accordance with the Scheduling Order; the respective Parties to the Stipulation having appeared by their attorneys of record; the Court having heard and considered evidence in support of the proposed settlement (the "Settlement") set forth in the Stipulation; the attorneys for the respective Parties to the Stipulation having been heard; an opportunity to be heard having been given to all other persons requesting to be heard in accordance with the Scheduling Order; the Court having determined that notice to the Class was adequate and sufficient; and the entire matter of the proposed Settlement having been heard and considered by the Court;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THIS __3__ DAY OF JANUARY, 2012, AS FOLLOWS:

1. The Notice of Pendency of Class Action, Proposed Settlement of Class Action, Settlement Hearing, and Right to Appear (the "Notice") has been provided pursuant to and in the manner directed by the Scheduling Order; proof of dissemination of the Notice was

filed with the Court; and a full opportunity to be heard has been offered to all Parties, the Class, and persons in interest. The form and manner of the Notice is hereby determined to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of due process, Delaware Court of Chancery Rule 23, and applicable law. It is further determined that all members of the Class are bound by this Final Order and Judgment.

2.     Based on the record in the Delaware Action, each of the provisions of Delaware Court of Chancery Rule 23 has been satisfied and the Delaware Action has been properly maintained according to the provisions of Delaware Court of Chancery Rules 23(a), 23(b)(1) and 23(b)(2). Specifically, this Court finds that the Class is so numerous that joinder of all members would have been impracticable and that the Class satisfies the numerosity requirement of Rule 23(a)(1). As of March 15, 2011, LaBarge, Inc. had 15,825,927 outstanding shares, of which approximately 12.5 million shares are owned by members of the Class. There are questions of law and fact common to the Class sufficient to satisfy Rule 23(a)(2), including whether the disclosures made by Defendants LaBarge, Ducommun Incorporated ("Ducommun"), DLBMS, Inc. ("DLBMS"), Craig E. LaBarge, Robert G. Clark, John G. Helmkamp, Jr., Lawrence J. LeGrand, Thomas A. Corcoran and Jack E. Thomas, Jr., in connection with the Merger (as defined in the Stipulation) were adequate, whether the individual defendants breached their fiduciary duties to members of the Class, and whether the plaintiff in this Delaware Action ("Plaintiff") and members of the Class were injured as a consequence of the Defendants' actions. The claims of the representative Plaintiff are typical of the claims of absent members of the Class in that they all arise from the same allegedly wrongful course of conduct and are based on the same legal theories, satisfying Rule 23(a)(3).

The representative Plaintiff and his counsel are adequate representatives of the Class, satisfying Rule 23(a)(4).  Plaintiff and his counsel have fairly and adequately protected and represented the interests of the Class.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications which would establish incompatible standards of conduct for the Defendants, and, as a practical matter, the disposition of this Delaware Action will influence the disposition of any pending or future identical cases brought by other members of the Class, satisfying Rule 23(b)(1); and there were allegations that Defendants acted or refused to act on grounds generally applicable to the Class, satisfying Rule 23(b)(2).

3.  The Delaware Action is hereby certified as a class action, pursuant to Delaware Court of Chancery Rules 23(a), 23(b)(1) and 23(b)(2), on behalf of a non-opt out class defined as:  All record and beneficial owners of common stock of LaBarge at any time during the period beginning on and including April 4, 2011, through and including June 28, 2011, the effective date of the Merger, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under any of them, and each of them.  Excluded from the Class are Defendants, members of the immediate family of any Defendant, any entity in which a Defendant has or had a controlling interest, officers of LaBarge and the legal representatives, heirs, successors or assigns of any such excluded person.

4.  Pursuant to Delaware Court of Chancery Rules 23(a), 23(b)(1) and 23(b)(2), plaintiff Barry P. Borodkin ("Borodkin" or "Plaintiff") is certified as representative of

the Class and the law firms of Lowey Dannenberg Cohen & Hart, P.C., Barrack, Rodos & Bacine and Rosenthal Monhait & Goddess P.A. are certified as Class Counsel.

5.     The Settlement is found to be fair, reasonable and adequate and in the best interest of the Class, and is hereby approved pursuant to Delaware Court of Chancery Rule 23(e). The Parties to the Stipulation are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions, and the Register in Chancery is directed to enter and docket this Final Order and Judgment.

6.     The Delaware Action is hereby dismissed with prejudice on the merits and without costs, except as provided herein, against any party.

7.     As provided in the Stipulation:

(a)     Plaintiff's claims asserted in the Actions on behalf of the Class against all Defendants shall be dismissed on the merits with prejudice against Plaintiff and all members of the Class.

(b)     Upon occurrence of the Final Approval, all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, fees, expenses, costs, matters and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, that have been, could have been, or in the future can or might be asserted in the Action, or in any court, tribunal or proceeding (including, but not limited to, any claims arising under federal or state statutory or common law relating to alleged fraud, breach of care, breach of duty of loyalty, breach of duty of candor, misrepresentation or omission, negligence or gross negligence, breach of trust, unjust enrichment, improper personal benefit, aiding and abetting, or otherwise) by or on behalf

4

of any member of the Class, whether individual, class, derivative, representative, legal, equitable or any other type or in any other capacity, and whether relating to the purchase, sale, or other acquisition, disposition, or holding of LaBarge securities, against Defendants (or any one of them) or any of their respective families, parent entities, associates, affiliates, or subsidiaries and each and all of their respective past or present officers, directors, stockholders, partners, members, representative, employees, financial or investment advisors, other advisors, consultants, accountants, attorneys, investment bankers, commercial bankers, trustees, engineers, insurers, co-insurers and reinsurers, agents, heirs, executors, general or limited partners or partnerships, limited liability companies, personal or legal representatives, estates, administrators, predecessors, successors and assigns (collectively, the "Released Persons") which have arisen, could have arisen, arise now or hereafter arise out of, or relate in any manner to, the allegations, facts, events, acquisitions, matters, transactions, acts, occurrences, statements, representations, omissions or any other matter, thing or cause whatsoever, or any series thereof, embraced, involved, set forth in the Action or otherwise related to (i) the Merger; (ii) the adequacy of the consideration to be paid to LaBarge shareholders in connection with the Merger; (iii) the fiduciary obligations of any of the Defendants or Released Persons in connection with the Merger; (iv) the negotiations in connection with the Merger, including any alleged deal protection devices; (v) the disclosures or disclosure obligations of any of the Defendants or Released Persons in connection with the Merger; (vi) the alleged aiding and abetting of any breach of fiduciary duty; (vii) any alleged improper personal benefit, conflict of interest, improper payments of any remuneration or employment benefits to any individual made in connection with the Merger; (viii) the

conduct, acts and statements of any of the Defendants or Released Persons in connection with or with respect to the Merger; and (ix) any other allegations or claims that were set forth in the Complaint (collectively, the "Settled Claims") are hereby completely, fully, finally, and forever compromised, settled, released, discharged, extinguished, relinquished, and dismissed with prejudice, *provided, however*, that the Settled Claims shall not include (i) the right of any Party, including Defendants, to enforce in the Court the terms of this Settlement and (ii) claims for appraisal pursuant to Section 262 of the Delaware General Corporation Law.

c)      The release contemplated by this Settlement extends to claims that Plaintiff Borodkin and the Class (the "Releasing Parties") do not know or suspect to exist at the time of the release, which if known, might have affected the decision of the Releasing Parties to enter into the release. The Releasing Parties and each member of the Class shall be deemed to waive and relinquish, to the extent applicable, and to the full extent permitted by law, any and all provisions, rights and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims. Further, Plaintiff Borodkin, for himself and on behalf of the Class, shall be deemed to waive, and shall waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

d)      Plaintiff Borodkin, for himself and on behalf of the Class, acknowledges that members of the Class may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is his intention, as Plaintiff and on behalf of the Class, to fully, finally and forever settle and release any and all claims released hereby, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts.

e)      Defendants release Plaintiffs, members of the Class and their counsel, from all claims arising out of the instituting, prosecution, settlement or resolution of the Action, provided however, that the Defendants and Released Persons shall retain the right to enforce in the Court the terms of this Stipulation or the MOU, and to oppose or defend any appraisal rights asserted by any class member.

8.      Plaintiffs' Counsel are hereby awarded attorneys' fees and expenses in the aggregate sum of $ _600,000_ , which the Court finds to be fair and reasonable and which shall be paid to Plaintiffs' Counsel in accordance with the terms of the Stipulation.  It is the Court's intent in awarding fees in this case that no further applications for fee awards will be entertained under Delaware law either before this Court or in any other jurisdiction.

9.      The effectiveness of this Final Order and Judgment and the obligations of Plaintiff and Defendants under the Stipulation shall not be conditioned upon or subject to the resolution of any appeal from this Final Order and Judgment that relates solely to the issue of Plaintiffs' Counsel's application for an award of attorneys' fees and expenses.

10.      Neither the MOU (as defined in the Stipulation), the Stipulation, the Settlement, this Final Order and Judgment, nor any of their terms and provisions, nor any of the negotiations, discussions, and proceedings in connection with any of them, shall be deemed or constitute a

presumption, concession, or an admission by any party to the Stipulation of any fault, liability, or wrongdoing by any of them, and shall not be referred to, used, discoverable, interpreted, construed, deemed, involved, offered, or received in evidence or otherwise used by any person in the Delaware Action or in any other action or proceeding in any forum for any purpose whatsoever, whether civil, criminal, or administrative, except as may be necessary in connection with any proceeding solely to enforce the terms of the Stipulation (including an application for an award of attorneys' fees and expenses) or to argue that the Stipulation and/or this Final Order and Judgment has *res judicata*, collateral estoppel or other issue or claim preclusion effect.

11.    Without affecting the finality of this Order and Final Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration and consummation of the Settlement.

_____
Vice Chancellor John W. Noble