**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE COVIDIEN PLC SECURITIES LITIGATION | Civil Action No. 1:14-cv-12949-LTS<br><br>Class Action |

**DECLARATION OF G. BRIAN HUTCHINSON IN SUPPORT OF OBJECTION OF WINONA A. CRIST TO PROPOSED SETTLEMENT AND REQUEST FOR ATTORNEYS' FEES**

I, G. Brian Hutchinson, under penalties as provided by law, declare that the statements set forth in this instrument are true and correct to the best of my knowledge. I am over the age of 21 and have personal knowledge of the facts stated herein and where I do not I believe same to be true:

1. I have been asked to evaluate the proposed settlement terms of the above-captioned matter (the "Settlement") in order to offer an opinion on whether they benefit Covidien plc. ("Covidien" or the "Company") and its shareholders, with particular regard to Irish law.

2. I note that the settlement provides no monetary relief for the plaintiff class. I note further that plaintiffs' counsel claims to have benefited the plaintiff class by obtaining (1) settlement of the claims and (2) supplemental disclosures as settlement consideration. On the basis of this claimed benefit, plaintiff's counsel, it appears, has applied for a substantial amount, not exceeding $540,000, in attorney's fees. I further note that the consideration supplied by the plaintiff class for the said settlement comprises a broad release against claims known or unknown, litigated or unlitigated.

3. My opinion, based upon the analysis set forth herein, is that the settlement provides no legally cognizable benefit to shareholders as the claim would not have succeeded in any event in Irish law. In the circumstances the merit of the settlement and the payment of any fees on foot of the settlement must be called into doubt.

Personal Background and Qualifications

4. I am Senior Lecturer at the UCD Sutherland School of Law at University College Dublin, Ireland, where I have been teaching since 1991 and have variously served as Vice Dean, Assistant Dean, Associate Dean, and Director of the UCD Commercial Law Centre. A copy of my curriculum vitae is attached hereto as Appendix A.

5. My specialty is Company and Commercial Law. I have numerous publications in these areas, including two of the recognized "standard textbooks" on Irish Company Law.[1] I regularly teach courses and seminars on these subjects and speak on them at academic and professional conferences throughout Europe and around the world. In 2012 I was appointed by the Irish Minister for Jobs, Enterprise and Employment to serve as a member of the statutory Company Law Review Group to advise the Irish Government on all matters of Company Law, including the form and content of the new Companies Act 2014. I was reappointed for a further 3 year term in 2014 and I co-chair the subcommittee which oversees Part II of the Act on the formation and registration of companies.

The Merger and Merger Approvals Process in Irish Law

6. It is accepted by all parties that Covidien plc, at all relevant times, was an Irish registered public limited company. As such, the rights of the shareholders and the obligations of the directors were governed by Irish company law.

7. I would begin by observing that litigation of the kind which resulted in the settlement now under review is relatively unknown in Irish Law. The Irish mergers process differs significantly from the US process to the extent that the Irish process includes a heavier oversight by the High Court and the statutory Irish Takeover Panel to ensure that the interests of the shareholders are protected through the provision of ample time and information. In this respect the Irish process preempts shareholder litigation by insisting on shareholder protection throughout the process and by providing avenues for concerned shareholders to have their concerns heard and addressed before the merger is concluded.

---

[1] Courtney, Hutchinson, O'Leary "The Law of Companies" 3ed 2012, Bloomsbury Professional, Dublin and London, (ISBN 9781847669514); Hutchinson "Keane on Company Law" 5ed 2015 (in press) Bloomsbury Professional Dublin and London (ISBN 978178043542).

8. I note that the various shareholder complaints giving rise to the settlement now being challenged make little reference, or no reference, to Irish law, but rather state standard principles of what appear to be Delaware and/or other US States' laws. In this regard the complaints appear to neglect to understand two important aspects of the Irish merger approvals process applicable and relevant in this case. The first concerns the Irish High Court's role in sanctioning mergers in the statutory "scheme of arrangement" to ensure that it is fair and equitable; the second relates to the role of the statutory Irish Takeover Panel in overseeing the mergers process to ensure that the shareholders have sufficient time and information to make an informed decision..

9. <u>The Role of the Irish High Court in Sanctioning Schemes of Arrangement</u>: The merger of Covidien with Medtronic took place in Ireland under Irish law using a mechanism provided in sections 201-203 of the Companies Act 1963 known as a "scheme of arrangement". Under these provisions, where two or more companies propose to amalgamate, the Irish High Court is asked to sanction the arrangement so that it becomes binding on all shareholders and creditors. The Court will first direct a meeting of the shareholder class or classes affected, and can only sanction the arrangement agreed at that meeting if at least 75% of those present in person or by proxy vote in favour of the arrangement. If the Court considers that the proposed arrangement can only be unfair, it will not even direct the meeting. Where the Court does direct the meeting and a resolution is passed in favour of the arrangement by the requisite majority, the Court will still not sanction a scheme which is *ultra vires* the company; or which has not been approved by the company whether through the board, liquidator, receiver or if appropriate, by means of a simple majority of the members in general meeting. The court will only confirm a scheme if it is satisfied that: (i) sufficient steps have been taken to identify and

notify all interested parties; (ii) the statutory provisions and procedures and all directions of the court have been complied with; (iii) the classes were properly constituted; (iv) the prescribed majorities at each meeting acted *bona fide* and no issue of coercion arises; and (v) the compromise or arrangement is 'fair and equitable' such that an intelligent and honest man, a member of the class concerned, acting in respect of his interest might reasonably approve. In sanctioning a scheme, the court may impose such conditions or modifications as it thinks fit in order to ensure that the arrangement or compromise is fair and equitable.

10. This last aspect of the Court's role in approving a merger by way of "scheme of arrangement" may be important in the context of these proceedings – the Court will not sanction an arrangement that is not fair and equitable to the shareholders, and will pay close attention to whether the necessary information and disclosures required for a fair and equitable agreement have been made to the class to enable them to vote on the proposed scheme.

11. Dissenting minorities have an opportunity to be heard by the Court before the Court decides whether to sanction the agreed scheme. The Court will not refuse to sanction simply because as a matter of business judgment it might have reached a contrary conclusion regarding the proposals; nor will it refuse to sanction where the dissenters have no interest at stake in the arrangement. As noted above, however, if the Court is satisfied that minority interests have been unfairly or inequitably affected, it will either not give its sanction or it will impose such conditions or modifications as it thinks fit in order to ensure that the arrangement or compromise is fair and equitable.

12. <u>The Role of the Irish Takeover Panel in Supervising Mergers:</u> The Irish Takeover Panel is the statutory body responsible for monitoring and supervising takeovers and other relevant transactions – including mergers and acquisitions – in listed public companies in Ireland. The

Panel is responsible for making rules to ensure that takeovers and other relevant transactions comply with the General Principles set out in the Irish legislation, which, since 1997, is substantially derived from European Union law concerning takeovers and mergers. The Panel also plays an ongoing oversight role in monitoring mergers and takeovers and managing disclosure throughout the process.[2]

13. The Rules of the Irish Takeover Panel provide an orderly framework within which takeovers and substantial mergers are conducted. They are not concerned with the financial or commercial advantages or disadvantages of a takeover, which are matters for the companies concerned and their shareholders. Nor are the Rules concerned with issues such as competition and mergers policies, the types of policies referred to in the United States as "anti-trust" law, which are regulated under different legislation. They are principally concerned with ensuring that an orderly and timely process is followed in which the shareholders affected have sufficient time and information to make an informed decision, and the Panel will supervise the process to ensure that the Rules are followed.

14. The relationship between the Takeover Panel and the High Court in a scheme of arrangement is also significant. The Companies Acts require both the court and the Takeover Panel to have due regard to the exercise by the other of their respective powers in relation to such a transaction. In particular, the Court may invite the Takeover Panel to provide any report or other information which appears relevant to the exercise of the Courts jurisdiction in relation to the scheme. In addition the applicant or other moving party must promptly provide the Takeover Panel with copies of any motion or petition in relation to any takeover scheme

---

[2] Full details concerning the Irish Takeover Panel, including its Rules and role in takeovers and mergers, are published on its website at http://www.irishtakeoverpanel.ie.

proceedings and details of the terms of any Court order. The Takeover Panel is at liberty to be heard in any such takeover scheme proceedings.

The Obligations of Directors in a Merger in Irish Law

15. It is further apparent to me upon reading those complaints that do make reference to Irish law in this case that they misconstrue the rights and entitlements of the shareholders and the obligations of the directors in the context of a merger.

16. The *Taxman* complaint filed in this District claims that:

> "Under Irish law, the directors of a private limited company like Covidien must not act in a manner that is oppressive to its shareholders, or where the affairs of the Company are being conducted in a manner which disregards the interests of its shareholders." [3]

17. Though not referenced in the complaint, this proposition is clearly derived from section 205 of the Irish Companies Act 1963 which gives shareholders a right to seek relief from the High Court in cases where the affairs of the company have been conducted in a manner which is oppressive to them or in disregard of their interests.

18. The claim follows the above proposition with the following:

> "In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control or (ii) a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to

---

[3] Paragraph 51, page 17.

receive a significant premium. To diligently comply with these duties, the directors may not take any action that: . . .

> (a) adversely affects the value provided to the corporation's shareholders;
>
> (b) will discourage or inhibit alternative offers to purchase control of the corporation or its assets;
>
> (c) contractually prohibits them from complying with their fiduciary duties;
>
> (d) will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or
>
> (e) will provide the directors with preferential treatment at the expense of, or separate from, the public shareholders.

In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Covidien, are obligated to refrain from:

> (a) participating in any transaction where the directors' or officers' loyalties are divided;
>
> (b) participating in any transaction where the directors or officers receive or are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or
>
> (c) unjustly enriching themselves at the expense or to the detriment of the public shareholders. [4]

---

[4] *Rosenfeld Family Foundation* v. *Covidien plc, et al.*, Shareholder Class Action Complaint for Violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and Oppression at ¶ 34 (Aug. 26, 2014).

7

This proposition, which I understand to be drawn directly from Deleware law and/or the law or other US states does not derive *at all* from section 205 of the Irish Companies Act 1963. On the contrary, said section requires that relief be given only where the internal management of the affairs of the company (including but not necessarily limited to the exercise of the powers of the directors) shall involve conduct which is 'burdensome, harsh and wrongful'. Examples of oppression from the case law include the diversion or misappropriation of corporate assets; the imposition of an unfair financial burden on a petitioner; exclusion of the petitioner from management of the affairs of a quasi-partnership company; a board's continued failure to declare dividends where the company had distributable profits; and a failure to consult members in respect of important transactions affecting the company. On the other hand, mismanagement will not generally constitute oppression per se.

19. Two further aspect of the s205 action are of note. First, the relief granted by the Court does *not* include damages. The obligation of the Court under the section is simply to order whatever it takes to "bring to an end the matters complained of." Most commonly, the remedy granted by the court is an order that the oppressive majority, or the company itself, buy out the petitioner's shares at a price which reflects the value they would have had, but for the oppressive conduct. Exceptionally, the court may instead order the oppressive majority to sell their shareholding in the company to the petitioner. Indeed, sub-s (3) makes it quite clear that the order to purchase shares may also be made as against the company itself. Or, the court might simply cancel an oppressive resolution or restrain the company from implementing it.

20. Second, where a member fails to object at the time to conduct which he considers to be oppressive or in disregard of his interests, he may be estopped from subsequently seeking relief

8

in respect of those transactions under s 205.[5] I consider that to be significant in this case considering the plaintiff class had an opportunity to object to the merger and/or raise any concerns they may have had about the directors before the High Court during the "scheme of arrangement" approval hearings.

21. Irish Law does, of course, recognize that the directors owe fiduciary duties to the shareholders and the company as a whole. Such shareholder rights are normally actionable only where the majority of the shareholders of the company are affirmatively in favour of the suit, though exceptionally a minority may bring a "derivative action" where, *inter alia,* the wrong complained of constituted "a fraud on the minority" and the wrongdoers are the controllers of the company. Where such an application is made the court will first determine whether the plaintiff has the necessary *locus standi* to sue and he must also show, on the basis of affidavit evidence, supported by counsel's opinion, that he has a realistic prospect of success. Moreover, even if he satisfies these tests the Court still has a discretion whether to grant leave and may take into account factors such as delay on the plaintiff's part, whether he has an ulterior motive for proceeding, whether the proceedings might of themselves damage the company and whether there is some alternative remedy available.

22. In the circumstances of this case, where the merger was overseen by the Irish Takeover panel, and approved by the Irish High Court in a process which gave dissenting minorities access to time and information and allowed them an opportunity to air their grievances prior to approval of the merger, I would consider the prospects of the Court subsequently granting leave to bring a derivative action on the basis of a "fraud on the minority" to be slim indeed.

---

[5] *Re New Ad Advertising Co Ltd* [2007] IEHC 436; *Re Greenore Trading Co Ltd* [1980] ILRM 94

<u>The "Taxation" of Attorney Fees in Irish Law and Absence of Class Actions</u>

23. I would add, briefly, that Irish Law employs the "indemnity principle" concerning awards of costs – typically the 'loser' pays their own and the other side's costs. Irish Law does not allow for class actions or contingent fee litigation in actions for relief against oppression of shareholder interests under section 205 of the Companies Act 2013, and even though there is a procedure in the "derivative action" whereby one shareholder can sue on behalf of the class, there is no concept in Irish law or procedure whereby a party's counsel's fees would be measured differently because the action concerned a class rather than an individual.

<u>Conclusion</u>

24. I have evaluated the terms of the Settlement in order to determine whether they benefit Covidien and its shareholders having regard to Irish Law.  My opinion, based upon the reasoning set forth above, is that the settlement provides doubtful and no real legal benefit to Covidien shareholders, since it was based on claims that have virtually no prospect of success in Irish Law given the high degree of High Court and Irish Takeover Panel oversight in the merger and the premium placed on shareholder protection and disclosure mandated by the Irish procedures, and the fact that the Irish procedures provide avenues for shareholder grievances to be aired during the merger process.

_____
G Brian Hutchinson

September 11, 2015